A. B. ANDREWS CO. et al. v. PUNCTURE PROOF FOOTWEAR CO.

(Circuit Court, E. D. Pennsylvania. March 26, 1909.)

No. 245.

1. COURTS (§ 292*)—TRADE-NAMES—UNFAIR COMPETITION—ACTIONS—JURISDICTION.

Where a trade-name had not been registered, as required by Act Cong. March 3, 1881, c. 138, 21 Stat. 502 (U. S. Comp. St. 1901, p. 3401), federal jurisdiction of a suit for unfair competition was not conferred by such

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

act, but existed only under the rules governing ordinary suits at law or in equity.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 292.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. COURTS (§ 292*)—TRADE-NAMES—UNFAIR COMPETITION—FEDERAL JURISDICTION.

Where a bill for unfair competition in the use of a trade-name did not allege that the name was used or to be used on goods intended to be transported to a foreign country or in commerce with Indian tribes, the federal Circuit Court did not acquire jurisdiction under Act Cong. March 3, 1881, c. 138, § 7, 21 Stat. 503 (U. S. Comp. St. 1901, p. 3403) providing that in case of wrongful use of a trade-mark in such commerce, all courts of the United States shall have original and appellate jurisdiction, without regard to the amount in controversy.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 834; Dec. Dig. § 292.*]

3. COURTS (§ 315*)—DIVERSE CITIZENSHIP—PARTNERSHIP.

Where the members of a firm owning the right to a trade-name in controversy contracted to transfer the same to a corporation on receipt of $4,000, to be paid as a royalty on hosiery at the rate of 2 cents per dozen, the members of such firm, prior to the payment of the purchase price, had an actual interest in a suit by the purchaser for alleged unfair competition in the use of such trade-name.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 315.*]

4. COURTS (§ 315*)—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP.

A firm, one of the members of which was a citizen and resident of Pennsylvania, contracted to sell to plaintiff, a New York corporation, the right to use a trade-name, the firm, however, retaining title until payment of $4,000 by way of a royalty, which had not been accomplished at the time the corporation filed a bill against defendant, a Pennsylvania corporation, for unfair competition. *Held* that, since the interest of the firm was real and substantial, there was no sufficient diversity of citizenship, and that the federal Circuit Court had no jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 861; Dec. Dig. § 315.*]

5. COURTS (§ 280*)—FEDERAL COURTS—JURISDICTION—DETERMINATION.

A federal court is not only permitted, but is bound, to examine an action and refuse relief, unless jurisdictional elements affirmatively appear.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 818; Dec. Dig. § 280.*]

In Equity. On motion for preliminary injunction.

O. Ellery Edwards, Jr., for complainants.
Sundheim & Fleisher, for respondent.

J. B. McPHERSON, District Judge. This is an action brought to redress unfair competition in the use of a trade-name—"Puncture Proof." As the name has not been registered, Act March 3, 1881, c. 138, 21 Stat. 502, 1 Supp. Rev. St. 322 (U. S. Comp. St. 1901, p. 3401). does not apply, and the jurisdiction of the Circuit Court is to be tested by the rules that govern in the ordinary suit at law or in equity. Moreover, even if the name were registered, the bill does not allege that it was used, or to be used, on goods intended to be transported to a foreign country or in commerce with the Indian tribes, and

---

therefore the Circuit Court does not acquire jurisdiction under section 7 of the statute. Ryder v. Holt, 128 U. S. 525, 9 Sup. Ct. 145, 32 L. Ed. 529; Prince's Paint Co. v. Prince Mfg. Co. (C. C.) 53 Fed. 493. If the bill can be maintained, there must be diversity of citizenship, and the requisite amount must appear to be involved.

So far as the amount in controversy is concerned I shall assume that the averments of the bill are sufficient; but, when the element of diverse citizenship is sought for, it seems to be plain that the needful diversity does not appear. On the contrary, the bill sets forth affirmatively that one of the complainants is a citizen and resident of Pennsylvania, while the defendant is a Pennsylvania corporation. The complainants are the A. B. Andrews Company, a New York corporation, and the Humpty Dumpty Stocking Company, a partnership created under the laws of Tennessee and averred to be composed of two persons, Frank L. Chipman, a citizen of Pennsylvania, and a resident of Easton, in the county of Northampton, and Frank Weiss, a citizen and resident of Tennessee. Apparently to avoid the consequences of this averment, the bill goes on to declare in paragraph 3 that more than a year ago, and before the present controversy arose, by a certain contract in writing—

"the A. B. Andrews Company, one of the complainants herein, assumed the entire right and interest, but not title, to all the trade-marks of the Humpty Dumpty Company and the good will of the business, the title to said marks to remain in the Humpty Dumpty Stocking Company until certain royalties provided for in the contract equaled $4,000, at which time the titles of all trade-marks are to vest in the said A. B. Andrews Company."

It is evidently supposed that because of this contract the Humpty Dumpty Stocking Company is a merely nominal party, and that the citizenship of the partners may therefore be disregarded. Wilson v. Oswego Township, 151 U. S. 64, 14 Sup. Ct. 259, 38 L. Ed. 70; Stewart v. B. & O. R. R. Co., 168 U. S. 449, 18 Sup. Ct. 105, 42 L. Ed. 537. I am unable to assent to this view. The contract between the A. B. Andrews Company and the Humpty Dumpty Stocking Company concerning the trade-name in question is appended to the bill, and provides, inter alia, as follows:

"Whereas, the Humpty Dumpty Stocking Company has been and now is engaged in the business of selling hosiery under the brand known to the trade as 'Humpty Dumpty' hosiery, which includes other names, such as * * * 'Puncture Proof.' * * * For the purposes of this contract all of the said trade-names are referred to under the one name of 'Humpty Dumpty.'

"And whereas, the said Frank A. Weiss and Frank L. Chipman are desirous of preserving the trade-marks, trade-names, and good will of their business for the A. B. Andrews Company, a corporation created by and existing under the laws of the state of New York: Now, therefore, * * * it is mutually agreed:

"First. That the parties of the first part assign the good will of the Humpty Dumpty Stocking Company to the party of the second part.

"Second. That when the sum of $4,000 has been paid to the parties of the first part by the party of the second part, as provided for under this agreement, they will transfer all their right, title, and interest in and to the registered trade-mark 'Humpty Dumpty' and to the rights in and to the trade-names as specified above, heretofore used by them, whether registered as trade-marks or not.

"Third. All plates, copyrights, post cards, booklets, and literature used in connection with or descriptive of hosiery sold by the Humpty Dumpty Stocking Company are to become the property of the party of the second part, at the same time that the registered trade-mark is transferred to the party of the second part. A schedule of the property referred to in this paragraph is hereto appended, and the party of the second part is to be entitled to use the said property without actual expenses to them until such time as title to it actually passes, and they shall also have the exclusive use of the name and trade-mark of 'Humpty Dumpty' and other trade-names heretofore used by the parties of the first part until such time as they actually come into the possession of the party of the second part hereunder.

"Fourth. On every dozen pair of hose sold by the party of the second part under the name of 'Humpty Dumpty' they shall pay Frank A. Weiss, for the parties of the first part, the sum of 2 cents, and when in this way the sum of $4.000 has been paid the title to the property described in paragraph third hereof and to the registered trade-mark and unregistered trade-marks mentioned in paragraph third hereof shall pass to the party of the second part."

It was conceded at the argument that the $4,000 thus referred to has not been paid, and it seems to me therefore to be clear that both the legal title to the trade-name, "Puncture Proof," and the beneficial interest to an unspecified extent, still remain in the partners, Chipman and Weiss, and that for this reason they are real and substantial, and not merely nominal, parties to the bill. As they have not been paid in full, they have an obvious interest in the extent of the sales to be made by the A. B. Andrews Company; for upon these sales depends the amount of royalty to be paid under the contract, and therefore whatever hurts the trade of the A. B. Andrews Company does damage also to the interest of those who are still the owners to some extent of the right to the trade-name. The objection to the jurisdiction appears to be insurmountable. The interest of Chipman is real and substantial, and as he is a citizen and resident of Pennsylvania, and as, therefore, all of the complainants are not diverse in citizenship from the defendant, it follows that the Circuit Court has no jurisdiction of the present dispute. As was said by Chief Justice Marshall in Strawbridge v. Curtiss, 3 Cranch, 267, 2 L. Ed. 435:

"Where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in the courts of the United States."

See, also, New Orleans v. Winter, 1 Wheat. 92, 4 L. Ed. 44; Coal Co. v. Blatchford, 11 Wall. 172, 20 L. Ed. 179; Case of Sewing Machine Cos., 18 Wall. 553, 21 L. Ed. 914; Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635; Merchants', etc., Co. v. Insurance Co., 151 U. S. 384, 14 Sup. Ct. 367, 38 L. Ed. 195; Hooe v. Jamieson, 166 U. S. 395, 17 Sup. Ct. 596, 41 L. Ed. 1049.

I need scarcely add that a federal court is not only permitted, but is bound, to scrutinize an action that is submitted for its decision, in order to see that the necessary elements of jurisdiction exist, and is required to refuse its aid to the plaintiff unless its right to judge the controversy affirmatively and completely appears. Mansfield, etc., Ry. v. Swan, 111 U. S. 382, 4 Sup. Ct. 510, 28 L. Ed. 462; Metcalf v. Watertown, 128 U. S. 589, 9 Sup. Ct. 173, 32 L. Ed. 543; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690; Colorado, etc.,

Co. v. Turck, 150 U. S. 143, 14 Sup. Ct. 35, 37 L. Ed. 1030; Great Southern, etc., Co. v. Jones, 177 U. S. 449, 20 Sup. Ct. 690, 44 L. Ed. 842.

The motion for a preliminary injunction is refused.