## GOICO et al. v. RUSSELL & CO.

(Circuit Court of Appeals, First Circuit. February 18, 1925.)

No. 1542.

1. **Courts ⊕315—As respects jurisdiction depending on diversity of citizenship, citizenship of partnership is that of its members.**

Where the jurisdiction of a federal court over a suit against a partnership depends on diversity of citizenship, the question is to be determined by the citizenship of its members, though under the law of the place of its origin it is regarded as an entity, and may sue or be sued in its partnership name.

2. **Ejectment ⊕108—Dismissal of complaint for insufficiency of description held error under the pleadings.**

Where defendant in revindication by its answer admitted possession of the land described in the complaint, and alleged title thereto, without objection to the sufficiency of the description, the introduction by plaintiff of a record title corresponding to the description pleaded made a prima facie case, leaving the defendant to establish its alleged title, and dismissal of the complaint for insufficiency of description of the land was error.

3. **Ejectment ⊕64—Description of land as bounded by lands of other owners named held sufficient.**

A description of a tract of land as bounded by lands of other owners named is not unusual, and is sufficient in a complaint in revindication.

4. **Ejectment ⊕64—Necessity of survey or other extrinsic evidence to ascertain exact boundaries will not defeat action.**

That resort must be had to a survey or other extrinsic evidence to ascertain the definite boundaries of land described in a complaint in revindication will not defeat the action.

5. **Evidence ⊕474(18) — Testimony as to character of soil and productive value held admissible, though witness did not know boundaries.**

In an action of revindication for a small tract of land included within a larger tract, the testimony of a witness, who was familiar with the larger tract and was in control of similar land in the vicinity, planted to a like crop, as to the character of the soil and the value of the crop thereon, *held* admissible, though he did not know the boundaries of the tract in controversy.

In Error to the District Court of the United States for the District of Porto Rico; Odlin, Judge.

Action at law by Osvaldo Goico and others against Russell & Co. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

Jose A. Poventud, of New York City, for plaintiffs in error.

Francis E. Neagle, of New York City (Raymond E. Cook and Rounds, Hatch, Dillingham & Debevoise, all of New York City, and O. B. Frazer, of San Juan, Porto Rico, on the brief), for defendant in error.

---

[1] Extract from charge: "If, as the judges of the facts, you shall come to the conclusion that she was invited to go on the boat through the middle gangway, which, of course, would necessitate her entrance upon the actual boat in the same relative position, the middle position, you can from that deduce the fact that she went, not as a mere licensee, but as an invitee, which would change the status of her in relation to the defendant company. If you should find that she simply went on as a so-called licensee, that there was nothing but a bare, naked permission on the part of the company, she would by that act of hers assume such risks as might be incident to that travel on her part, and the company could only be held liable for such negligence as was the result of willfulness in the line of neglect on that company's part. You will therefore find as to whether or not she went on as an invitee."

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. [1] This is an action of revindication (ejectment), brought in the District Court for the Judicial District of Ponce, and removed by the defendant to the District Court of the United States for Porto Rico. The plaintiff's first contention is that there was error in denying its motion to remand to the insular court, on the ground that the defendant was a partnership, domiciled in Porto Rico, which is also the domicile of the plaintiffs. This contention is without merit. The defendant partners are domiciled in the United States and Great Britain. It is immaterial that under the law of Porto Rico the partnership is an entity referred to in the singular number. This court held in Porto Rico v. Fortuna Estates, 279 F. 500 (the same partnership now defendant in this suit), that "where the jurisdiction of a federal court over a suit brought against a partnership depends upon diversity of citizenship, the question is to be determined by the citizenship of its members, whether under the law of the place of its origin it is regarded as an entity and may sue or be sued in its partnership name." Compare also Mestre v. Russell & Co. (C. C. A.) 279 F. 44. These decisions are conclusive of the right of the defendant to remove. We pass certain alleged technical errors in the removal papers as too trifling for discussion.

[2] At the close of the plaintiff's case, the court granted the defendant's motion for a nonsuit, on the ground that the description of the locus was "so vague and indefinite as to make it impossible for the court or any officer thereof to identify the land." This is the chief point in the case, and its consideration requires an outline of the pleadings.

The amended complaint sets forth that the plaintiffs "are the absolute owners pro indiviso, and entitled to the immediate possession, with title duly registered, of a certain tract of land described as follows: 'Tract or parcel of land situated in the municipal district Juana Diaz (Porto Rico), ward or barrio of Amuelas, bounded by the south, east and west with property of Estefania Rivera (now the defendant company), and by the north with lands of Don Manuel Rodriguez. It is composed of six cuerdas (acres), equivalent to two hectares, thirty-five ares, and eighty-two centiares.'"

Also that the "defendant, from June 28, 1917, and at present, withholds and possesses, without right or title thereto, and hence in bad faith," the described land, and has appropriated the products and profits to the plaintiffs' damage in the sum of $8,000.

In the answer, the defendant, on information and belief, denies "that plaintiffs are the owners either pro indiviso or otherwise of the tract of land described in said complaint"; also that they are entitled to possession, or that "said land is registered in the name of the plaintiffs." It alleges that the defendant has at all times held said land in good faith and with good title.

And for a second defense defendant alleges that the defendant is the owner of a tract of land described as follows:

"Tract of land situated in the municipal district of Juana Diaz, barrio of Amuelas, with areas of one hundred cuerdas, equivalent to thirty-nine hectares, thirty ares, and forty centiares. It borders on the north with lands of Don Jose Gallart and those of Don Jose Ortiz, on the east with the lands of the same Gallart, on the south of Jacaguas river, and on the west with lands of Don Francisco Chinchillo."

That on or about October 6, 1916, the plaintiffs then owning an undivided nine-tenths of said land, and a co-owner owning the remaining undivided one-tenth, sold to the Fortuna Estates (defendant's predecessor in title) this tract of land for $25,000; that the land described in plaintiffs' complaint is included in this larger area, title to which is thus alleged to have vested in said defendant.

For a third defense, defendant alleges that the land described in the complaint was represented by the plaintiffs to be a part of the land sold to the Fortuna Estates for $25,000, so that plaintiffs should not now be permitted to allege that the land described in the complaint is not within the tract thus sold to the Fortuna Estates.

A fourth defense sets up that the defendant is the owner of a parcel described as follows: "Rustic. Piece of land situated in the district of Juana Diaz, barrio of Amuelas. It borders on all sides with the Hacienda Luciana of Don Juan Forgas y Bayo (now property of the defendant). It has an area of nine and a half cuerdas, equivalent to three hectares, seventy-three ares, and thirty-nine centiares;" and that the property described in the complaint is included either in this described tract or in the one described under the second defense.

The fifth and sixth defenses are allegations of possession since the year 1860 and title by prescription.

It thus appears that the issue joined was —title to a tract, assumed in the answer to be sufficiently described; that no question was made as to the sufficiency of the description.

At the trial before a jury, the plaintiffs introduced a certificate issued by the Ponce Register of Property, which we understand learned counsel for the defendant to concede made a prima facie case of title in the plaintiffs of a tract of land, described at folio 66 of Volume 2 of the Municipality of Juana Diaz, property number 62, as follows:

"Rural Property. Portion of land situate in the jurisdiction of Juana Diaz, 'Amuelas' ward. It is bounded on the south, east and west by the property of Dona Estefania Rivera and on the north by the property of Don Manuel Rodriguez. It has an area of six cuerdas, equivalent to two hectares, thirty-five ares, and eighty-two centiares, of which about one cuerda is planted to plantains and coffee trees, and the remainder is devoted to pasture."

This certificate states that this property is described in slightly different terms at folio 70 of said volume; it also sets forth some history of the plaintiffs' title. No question is made that, unless the description is defective, this is the usual and regular way of making prima facie legal proof of title to property in Porto Rico. The description from the registry bounds the property as does the complaint.

Plaintiff also offered evidence of a witness named Oppenheimer, to the effect that he had been employed by the Fortuna Estates and the defendant as overseer in charge of the lands which covered the locus (now the Goico land); that he knew the Goico land; that it was good land, producing about 30 tons of sugar cane to the acre on an average. He gave other testimony as to the value of this crop, in dollars, during the years in question. But on cross-examination, witness said that he only knew the land by reference; that he passed through there once in a while; that he heard there was a lawsuit; that he was in control of land like this in the same neighborhood, planted with the same crops; that he did not know the 6 acres exactly, but did know the whole tract of land. On redirect, he testified that, if told that the locus was bounded on the east, south, and west by the Estefania Rivera and the Goico land, he would know where it was. The court thereupon, subject to the plaintiffs' exception, excluded Oppenheimer's testimony.

Plaintiffs then rested, and the defendant, without offering any evidence, moved, and the court granted the motion, for a nonsuit, on the ground of lack of evidence.

We think that this ruling was erroneous. It disregards the facts that in the defendant's answer no question is raised as to the description of the land by the plaintiffs; that the defendant admits possession of the tract described and claims good title, grounded in various ways upon purchases derived in whole or in part from plaintiffs, and also by prescription. On such pleadings, the plaintiffs, after making a prima facie case by showing a record title, corresponding in description to that pleaded, had a right to rest their case, leaving the defendant to show, if it could, its title to the lands in question under any one of the claims pleaded. It is to be noted that the defendant had carefully and elaborately pleaded five or six different ways in which it said it had title to the described lands. Nowhere was there any contention made that the description was not sufficient to enable it to meet the plaintiffs' case.

[3, 4] Moreover the description of a locus of about 6 acres in a designated ward (Amuelas) bounded on the south, east, and west by property of Estefania Rivera (now the defendant company), and on the north by land of Don Manuel Rodriguez, is a sort of description commonly found in deeds and mortgages in many of the United States, as well as in Porto Rico. Compare the descriptions before the court in Polo v. Fernandez, 27 P. R. 893. The descriptions in the answer of the two parcels, one or the other of which the defendant alleges covered the plaintiffs' locus, are in almost the same general terms—bounded by reference to lands of other named owners. It is not argued that a deed containing such a description would be void for indefiniteness. It is, of course, common knowledge that a large part of our deeds contain no clearer or more easily ascertained boundaries of the granted premises. But the fact that such descriptions sometimes compel resort to surveyors, to the "memory of the oldest inhabitants" as to actual possession of the abutting properties, or to other means of delimiting the locus, is no adequate reason for holding the owner of a record title, good so far as we may now know, remediless. So to hold would lay down a rule which, if followed, might upset the titles to millions of dollars worth of lands.

Undoubtedly, the general rule is, as indicated by the court below, that in ejectment

there must be sufficient accuracy and definiteness of description, so that an officer may be able to locate the land and execute process thereon. See Collins v. Andriano, 264 Mo. 475, 482, 175 S. W. 194, and authorities cited; 19 C. J. 1106. But most of the cases cited and relied on by the defendant are cases in which the point has been taken on demurrer, or at any rate on pleadings easily distinguishable from the pleadings in the case at bar, where, as already stated, the defendant admits its possession of the locus described by the plaintiff, and sets up its own alleged superior title. The authorities cited do not support the proposition which the defendant must, on this record, sustain.

All that we now hold is that these plaintiffs made, on the pleadings and their evidence, a prima facie case, which required the defendant to go forward with its defenses. Inferentially, if the trial had proceeded, the evidence would probably have shown with definiteness the actual boundaries of the 6-acre tract in dispute.

Naturally, almost necessarily, when, as appears in this case, a large plantation is constituted of many smaller individual holdings, the descriptions of those holdings are made by reference to lands of adjoining owners. Of course, such reference does not identify property by monuments, or streets, or rivers; but the names of streets are sometimes changed, so that supplementary parol evidence may be necessary, and even when, as in our Western states, lands are described by parallels and meridians, surveys are not infrequently necessary to determine the boundaries of farm lands, and, perhaps even more frequently, necessary to determine the exact boundaries of town and city lots. It was error to order a nonsuit.

[5] While not entirely free from doubt, we think the court also erred in excluding from the consideration of the jury Oppenheimer's testimony as to the productive value of the 6-acre tract, on the ground that the witness did not know exactly where the locus was. Doubtless his testimony is in minor respects somewhat contradictory; but he did testify that he knew the Goico 100-acre tract, and that it was good cane land. During the cross-examination, the following occurred:

"Q. (by the Court). Do you know anything about the product of the land, except as you passed by it from time to time? A. No, sir.

"Q. (by the Court). Did you ever see anything gathered from it personally? A. No, sir; I only heard there was a lawsuit.

"Q. (by the Court). And you heard it was in dispute. You saw something growing on the land, but you do not know what it produced? A. No, sir.

"Q. (by the Court). Were you in control yourself personally of any land like this land in the same neighborhood? A. Yes, sir.

"Q. (by the Court). The same character of soil? A. Yes, sir.

"Q. (by the Court). Planted with the same crops? A. Yes, sir.

"Q. (by the Court). Are the figures that you testified to based on the same results from land that you did attend to and control? A. Yes sir.

"The Court: I think it is a question for the jury."

We think the court was right in this tentative view, that it was for the jury, and wrong when, a little later, it ruled the evidence incompetent because the witness said he did not know the "specific 6 acres" for which the suit was brought.

We cannot say that a jury would not have been warranted in finding from his evidence that the 6-acre tract was part of the larger tract concerning the productive value of which the witness was adequately informed. He was not called for the purpose of identifying the exact boundaries of the 6-acre tract. The answer admitted the defendant's possession; Oppenheimer's testimony was directed simply to showing the productive value of the entire tract, on the theory, not on the record unwarranted, that the 6 acres had the same proportionate value as the larger tract.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the plaintiffs in error recover costs in this court.