**NELSON & SMALL, INC., a Maine corporation, Plaintiff,**

v.

**POLARIS INDUSTRIES PARTNERS, L.P., a Limited Partnership, Polaris Industries, L.P., a Limited Partnership, Polaris Industries Associates, L.P., a Limited Partnership, and Polaris Industries Capital Corporation, Defendants.**

**Civ. No. 89–0077–P.**

United States District Court, D. Maine.

April 17, 1989.

Peter W. Culley, Pierce Atwood Scribner, Portland, Me., for plaintiff.

Ernest J. Babcock, Gregory W. Powell, Friedman & Babcock, Portland, Me., Elliott S. Kaplan, Minneapolis, Minn., for defendants.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO REMAND

GENE CARTER, Chief Judge.

This matter is before the Court for decision on the Plaintiff's Motion to Remand,

filed on March 30, 1989 (Docket No. 5). The motion was responded to by Defendants' filing on March 31, 1989 of their Memorandum in Opposition to Plaintiff's Motion to Remand (Docket No. 4M). The matter comes originally to the Court on a Verified Petition for Removal from Cumberland County Superior Court, State of Maine, filed on March 29, 1989 (Docket No. 1). On March 30, 1989, the Court entered its Memorandum of Decision and Temporary Restraining Order herein (Docket No. 6). The Motion for Remand having now been responded to, it is in order for decision on the papers, no request for oral argument having been made. Local Rule 19(f).

The motion is generated by the fact that one named Defendant herein is Polaris Industries Parnters, L.P. The record presently made before the Court is sufficient to permit the Court to find that Plaintiff Nelson & Small, Inc. is a limited partner in that defendant entity.[1] The "venerable doctrine," *see Colonial Realty Corp. v. Bache and Co.*, 358 F.2d 178, 183 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), requires complete diversity, that is, diversity of citizenship must exist between the plaintiff and each of the defendants. Thus, the narrow issue posed by the Motion to Remand is whether Nelson & Small, Inc.'s status as a limited partner in Polaris

Industries Partners, L.P. destroys complete diversity.

The parties herein rely on competing lines of authority from the various circuits. Plaintiff places principal reliance upon *Stouffer Corp. v. Breckenridge*, 859 F.2d 75 (8th Cir.1988). The court there held that "the better rule requires complete diversity between the plaintiff and all partners of the defendant corporation, limited as well as general partners." *Id.* at 76. Defendants, on the other hand, rely upon a line of cases best represented by *Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238 (5th Cir. 1986), and Judge Friendly's opinion in *Colonial Realty Corp. v. Bache and Co.*, *supra*. *Mesa* holds: "where it is possible to identify clearly a class of members as the real party to a controversy, the citizenship of that class alone is relevant for diversity purposes." *Id.* at 240. The opinion concludes that on the facts of that case, the general partners having, under the partnership agreement, exclusive control over the management of partnership affairs, they are the real parties to the controversy and that the citizenship of the limited partners is not to be considered in assessing whether complete diversity exists. *Id.* at 242–43.

Both parties have asserted that neither the United States Supreme Court nor the Court of Appeals for the First Circuit has decided the issue posed. This Court finds that not to be the state of the authorities.[2]

---

1. Plaintiff's counsel has indicated in briefing papers on the motion that there are other Maine citizens, present and former employees of Plaintiff, who are also limited partners in Defendant Polaris Industries Partners, L.P. Such is not established by any showing of evidentiary quality, and the Court makes no finding in that respect and does not consider their status in determining whether diversity of citizenship exists.

2. An interesting historical vignette of the law in the First Circuit on the point in issue is to be found in a trilogy of early First Circuit cases and the resulting United States Supreme Court case. In *Porto Rico v. Fortuna Estates*, 279 F. 500 (1st Cir.), *cert. denied*, 259 U.S. 587, 42 S.Ct. 590, 66 L.Ed. 1077 (1922), the sovereign entity of Puerto Rico sued a New York corporation in the local courts in an action of ejectment. The case was removed by defendant to the United States District Court on the basis of diversity of

citizenship. After the commencement of the suit, the defendant transferred its title to the premises giving rise to the ejectment claim to Russell & Company, a partnership organized under the Civil Code of Puerto Rico, *a sociedad en comandita* under local law having the character of a juridical person. *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 481, 53 S.Ct. 447, 449, 77 L.Ed. 903 (1933). That party was then joined as a defendant in the action. Plaintiff thereafter moved for remand on the theory that the defendant entity, irrespective of the citizenship of its members, was a citizen of Puerto Rico and that no diversity existed. The court *held* that the district court was not divested of its jurisdiction, which had properly attached to the case on its institution, by the subsequent joinder of the *sociedad*. The court then stated in *dictum:*

We are also of the opinion that, where the jurisdiction of a federal court over a suit brought against a partnership depends upon

In *Great Southern Fireproof Hotel Co. v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900), two members of a limited partnership organized under state law sued the defendant corporation and various partnerships, all alleged to be "doing business" in the State of Ohio. *Id.* at 450–51, 20 S.Ct. at 690–91. The complaint identified the plaintiffs as "members of the limited partnership association doing business under the name and style of Jones & Laughlins, Limited, which said association is a limited partnership association, organized under an act...." of the Pennsylvania Legislature. *Id.* at 450, 20 S.Ct. at 690. The complaint contained no allegation in respect to the citizenship of the partners in Jones & Laughlins, Limited, nor in respect to the citizenry of the partners in the various defendant partnerships. Jurisdiction was based on diversity of citizenship. The lower courts had decided the case on the merits.

On appeal, the United States Supreme Court noticed, *sua sponte*,[3] an issue as to

> diversity of citizenship, the question is to be determined by the citizenship of its members, whether under the law of the place of its origin it is regarded as an entity and may sue or be sued in its partnership name.

*Fortuna Estates*, 279 F. at 505.

The same issue was again generated in *Goico v. Russell & Co.*, 4 F.2d 7 (1st Cir.1925), in a similar action naming the same defendant-partnership, Russell & Company, as in *Fortuna Estates*. The court there converted its *dictum* in *Fortuna Estates* to a *holding*. *Goico*, 4 F.2d at 8. In *Porto Rico v. Havemeyer*, 60 F.2d 10 (1st Cir.), *cert. granted* by *Puerto Rico v. Russell & Co.*, 287 U.S. 593, 53 S.Ct. 222, 77 L.Ed. 518 (1932), *rev'd*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933), the same issue, involving the same *sociedad*, as a defendant was again generated. The court recited the prior history of its consideration of the issue, quoting its rationale as set out in *Goico*, 4 F.2d at 8, and observing "[i]n view of the consideration given to this question in our prior decisions, we do not find it necessary to consider the matter further. The motion to remand was properly denied." *Havemeyer*, 60 F.2d at 13.

That case was then appealed to the United States Supreme Court, where it appears as *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933). There, the appellant's position was that the *sociedad* should be treated as a corporation organized under the local Puerto Rican law, and that it should take the citizenship of Puerto Rico for diversity purposes, thus destroying diversity. The Court noted the corporate rule and further noted, citing *Great Southern Fireproof Hotel Co.*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900):

> [b]ut status as a unit for purposes of suit alone, as in the case of a joint stock company ... *or a limited partnership*, not shown to have the other attributes of a corporation ... has been deemed a legal personality too incomplete; what was but an association of individuals for so many ends and a juridical entity *for only a few*, was not easily to be treated as if it was a single citizen.

*Russell & Co.*, 288 U.S. at 480, 53 S.Ct. at 448 (citations omitted; emphasis added). The Court then went on to examine the attributes conferred upon the *sociedad* as a juridical entity by the substantive law of Puerto Rico and concluded that:

> [t]hat personality is so complete in contemplation of the law of Puerto Rico that we see no adequate reason for holding that the *sociedad* has a different status for purposes of federal jurisdiction than a corporation organized under that law. In neither case may non-residents of Puerto Rico, who have taken advantage of its laws to organize a juridical entity for the purpose of carrying on business there, remove from the Insular Courts controversies arising under local law.

*Id.* at 482, 53 S.Ct. at 449. In essence, the Court concluded that by the substantive law of Puerto Rico, the *sociedad* had been vested with a free-standing judicial entity status having so completely the characteristics of a corporation that it was to be treated for purposes of diversity determinations as if it was a corporation. That element of the Court's analysis apparently is not good law today. *United Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 150–51, 86 S.Ct. 272, 274–75, 15 L.Ed.2d 217 (1965). At the very least, the Supreme Court has limited the approach employed in *Russell & Co.* to its narrow facts: "[t]he problem ... was that of fitting an exotic creation of the civil law, the *sociedad en comandita*, into a federal scheme which knew it not." *Id.* at 151, 86 S.Ct. at 275.

On that analysis, the application of the general rule in respect to the citizenship of corporations was applied; the *sociedad* was deemed to be a citizen of Puerto Rico, the place of its formation; and the case was remanded to the Insular Courts for lack of diversity.

From this vignette, it may be clearly deduced that the law of the First Circuit has been, since the early days of this century, that an unincorporated association, *including a limited partnership*, is to be considered to be, for purposes of diversity determinations, a citizen of every state in which its partners, including its limited partners, reside. Such associations are deemed to take the citizenship of the individuals who make up the association, including the limited partners.

**3.** In the face of an argument that the issue was not generated below, the Court relied on the

whether the complaints alleged a sufficient showing of diversity jurisdiction. Plaintiffs there apparently argued that since they were suing on behalf of the partnership entity which was organized in Pennsylvania and was entitled to be treated as a corporation under Pennsylvania law, diversity of citizenship existed (*e.g.*, plaintiff, as a citizen of Pennsylvania, against defendant citizens of Ohio). The Court rejected both propositions and noted an added difficulty.[4] The Court held that the plaintiff was not a corporation under Pennsylvania law for purposes "within the jurisdictional rule" that a corporation is a citizen of its place of incorporation. *Id.* at 457, 20 S.Ct. at 693. Thus, it held, the plaintiffs could not be considered citizens of Pennsylvania on the basis of the status of the limited partnership as an entity. *Id.* at 456, 20 S.Ct. at 693. Rather, it said that the citizenship of the partners in the entity controlled the determination of the existence of diversity of citizenship, noting:

> [t]he rule that for purposes of jurisdiction and within the meaning of the clause of the Constitution extending the judicial powers of the United States to controversies between citizens of different States,

a corporation was to be deemed a citizen of the State creating it, has been so long recognized and applied that it is not now to be questioned. *No such rule however has been applied to partnership associations although such associations may have some of the characteristics of a corporation.* When the question relates to the jurisdiction of a Circuit Court of the United States as resting on the diverse citizenship of the parties we must look in the case of a suit by or against a partnership association *to the citizenship of the several persons composing such association.*

*Great Southern Fireproof Hotel Co.,* 177 U.S. at 456, 20 S.Ct. at 693 (emphasis added). The Court invoked the time-honored rule in respect to unincorporated associations. The Court made no distinction between general partners and limited partners in making such a determination, even though it had clearly noticed that the plaintiffs sued on behalf of the limited partnership. The general rule relied upon by the Court is widely accepted. *Stockman v. LaCroix,* 790 F.2d 584 (7th Cir.1986); *Village Fair Shopping Center Co. v. Sam*

---

rule that the Court has "a duty of ascertaining from the record" whether the lower courts could take jurisdiction of the case. *Id.* at 453, 20 S.Ct. at 691; citing *Mansfield Railway Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884), and *Capron v. Van Noorden,* 6 U.S. (2 Cranch) 126, 2 L.Ed. 229 (1804).

4. The Court noted:

> [a]nother question as to jurisdiction arises on the record. The citizenship of the members of the several partnerships that are named as defendants does not appear from the pleadings or otherwise. An allegation as to the State in which those firms were doing business is not sufficient to show the citizenship of the individual partners ... As no allusion was made to this matter at the argument before us, we do not now express any opinion upon the question whether the citizenship of the individuals composing the defendant partnerships doing business in Ohio is material to the jurisdiction of the Circuit Court.

*Great Southern,* 177 U.S. at 458, 20 S.Ct. at 693.
It may be argued that the strict *holding* of *Great Southern* is that the plaintiff must show, *as a matter of pleading,* the citizenship of the partners in any partnerships that are parties in order to establish the existence of diversity, and that since no such allegations were in the record

before the Court, it never reached the point of actually applying the rule for unincorporated associations to limited partnerships as such. Thus it could be contended that such a specific application of the rule is not part of the narrow *holding* of *Great Southern,* even though the case is often cited to support such an application.

However, in view of the fact that the Court was clearly aware that it was the diversity status of a *limited* partnership at issue in the case and the Court's specific articulation of the rule that the citizenship of "unincorporated associations" generally is determined by the citizenship "of the several persons composing such association," *id.* at 456, 20 S.Ct. at 693, there appears to be little reason for doubt that the Court, on an adequate record to do so, would have there determined the citizenship of the partnership entity in question by reference to that of its limited partners. Any doubt that may be perceived to exist is dissipated by the high premium that the Court has more recently put on the need for ease and certainty in determining the existence of diversity and the desirability of leaving expansive modifications of the existing rules of diversity determination to the judgment of the Legislative Branch articulated in *United Steelworkers v. R.H. Bouligny, Inc.,* 382 U.S. at 152–53, 86 S.Ct. at 275–76.

*Broadhead Trust,* 588 F.2d 431 (5th Cir. 1979); *Woodward v. D.H. Overmyer Co.,* 428 F.2d 880 (2d Cir.1970), *cert. denied* 400 U.S. 993, 91 S.Ct. 460, 27 L.Ed.2d 441 (1971); *Sutherland v. United States,* 74 F.2d 89 (8th Cir.1934); *Goico v. Russell & Co.,* 4 F.2d at 8; *Porto Rico v. Fortuna Estates,* 279 F. 500 (*dictum*); *A.B. Andrews v. Puncture Proof Footwear Co.,* 168 F. 762 (E.D.Pa.1909); *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.,* 639 F.Supp. 1532, 1537 (D.Mass.1986); *Murphy v. Gutfreund,* 624 F.Supp. 444 (S.D.N.Y.1985); *Consumer Savings Bank v. Touche Ross & Co.,* 613 F.Supp. 249 (D.Mass.1985); *Camden Securities Co. v. Lupowitz,* 500 F.Supp. 653 (E.D.Pa.1980); *Simpson v. De Vault,* 177 F.Supp. 914 (W.D.Va.1959).

This rule has repeatedly been applied specifically to limited partnerships. *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (dictum) (in determining existence of diversity of citizenship in suit to which joint stock company or limited partnership is a party, domicile to be looked to is that of individuals composing joint stock company or partnership); *New York State Teachers Retirement System v. Kalkus,* 764 F.2d 1015 (4th Cir.1985) (for purposes of diversity jurisdiction, citizenship of limited partnership is determined by considering citizenship of all of its partners, both general and limited); *Elston Investments Limited v. David Altman Leasing Corp.,* 731 F.2d 436 (7th Cir. 1984) (citizenship of all partners including limited partners is to be looked at for purposes of determining existence of diversity of citizenship); *Carlsberg Resources Corp. v. Cambria Savings and Loan Association,* 554 F.2d 1254 (3d Cir.1977) (citizenship of all partners including limited partners is to be looked to to determine existence of diversity of citizenship); *Unifirst Bank for Savings, F.A. v. Broadmoor Apartments of Tupelo,* 615 F.Supp. 85 (S.D.Miss.1985) (district court lacks jurisdiction of action under 28 U.S.C. § 1332 where defendant partnership has limited partners who are citizens of same state as plaintiff); *Windward City Center v.*

*Transamerica Occidental Life Insurance Co.,* 613 F.Supp. 1216 (D.Haw.1985) (in case of two-tiered limited partnership, district court must consider citizenship of both general and limited partners in determining existence of diversity jurisdiction); *Gore v. Stenson,* 616 F.Supp. 895 (S.D.Tex.1984) (where plaintiff limited partner and defendant general partner are only members of limited partnership, diversity jurisdiction exists over suit for breach of partnership agreement brought by limited partner, who is a citizen of Texas, against general partner, who is domiciled in Georgia, notwithstanding that limited partnership is alleged to be a citizen of Texas); *Conroy v. Winn,* 581 F.Supp. 1280 (D.D.C.1984) (limited partners are the parties to actions involving limited partnerships, for purposes of 28 U.S.C. § 1332); *Hereth v. Jones,* 544 F.Supp. 111 (E.D.Va.1982) (there is no complete diversity of citizenship where there is identity of citizenship between some limited partners of plaintiff limited partnership and defendants); *Williams v. Sheraton Inns, Inc.,* 514 F.Supp. 22 (E.D.Tenn.1980) (residence of limited partnership is not to be considered in determining diversity of citizenship); *Limbach Co. v. Renaissance Center Partnership,* 457 F.Supp. 347 (D.Pa.1978) (federal district court lacks jurisdiction under 28 U.S.C. § 1332 where complete diversity was lacking between plaintiff and all members of limited partnership despite fact that members of limited partnership were indispensable or proper party and citizenship of general partner would have established requisite diversity); *Grynberg v. B.B.L. Associates,* 436 F.Supp. 564 (D.Col.1977) (although limited partnership is business entity, created by statute, which can sue or be sued in its entity name, it is not corporate entity for diversity purposes under 28 U.S.C. § 1332; Colorado Uniform Limited Partnership Act, which provides limited partnership some quasi-corporate characteristics, has no effect on federal diversity jurisdiction); *contra Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238; *Colonial Realty Corp. v. Bache & Co.,* 358

F.2d 178;[5] *Petroleum Data Services, Inc. v. First City Bancorporation of Texas, Inc.*, 622 F.Supp. 1022 (D.Kan.1985); *C.P. Robinson Construction Co. v. National Corporation for Housing Partnerships*, 375 F.Supp. 446 (M.D.N.C.1974); *Erving v. Virginia Squires Basketball Club*, 349 F.Supp. 709 (E.D.N.Y.1972).

The Defendants, in opposing the Motion to Remand, assert, in reliance upon *Navarro Savings Association v. Lee*, 446 U.S. 458, 465, 100 S.Ct. 1779, 1784, 64 L.Ed.2d 425 (1980), that this Court, in determining whether diversity exists, must disregard the citizenship of the nominal parties and look to the general partners of Polaris Industries Partners, L.P., based upon the partnership provisions in respect to control of partnership affairs, as the "real parties to the controversy." Such a "functional analysis," they assert, will require a conclusion that diversity exists among the general partners of Polaris Industries Partners, L.P. and the Plaintiff Nelson & Small, Inc., and that the case may, therefore, remain in this Court. A similar position has

recently been advanced and dispatched in this circuit in *Consumer Savings Bank v. Touche Ross & Co.*, 613 F.Supp. 249 (D.Mass.1985); *see also Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1537–38 (D.Mass.1986) (Tauro, D.J.). In rejecting the argument,[6] the Court (per Young, D.J.) pointed out that *Navarro* is not a case involving a limited partnership but rather a case involving a suit on behalf of an express business trust, *id.* at 251, a distinction also noted and relied upon as grounds for distinction in *Stouffer*, 859 F.2d at 77.

The court in *Touche Ross* applied the established rule that citizenship of limited as well as general partners is to be looked to and controls in determining if complete diversity exists among the parties. The court set forth its reasons for rejecting the need for any "functional analysis" standard as follows:

> The focus on the statutory form of the party before it and the refusal to consider alleged analogies to other legal forms

5. In *Colonial Realty,* the Second Circuit opinion creates by judicial *fiat* an exception to the general rule that the citizenship for diversity purposes of any unincorporated association is determined by the citizenship of each of its members; the exception being that in the case of partnerships having limited partners, the citizenship of the general partners alone controls the determination. Because the decision predates that in the *Navarro* case, it takes no support from the rational of that case.

The wisdom of the exception has been widely criticized but nowhere more trenchantly than in *Carlsberg Resources Corp. v. Cambria Savings & Loan Ass'n,* 554 F.2d 1254 (3d Cir.1977). There, the weaknesses of the rationale for the exception are pointed out to be: (1) the opinion contains little analysis of the question (and, it may be added, reflects no citation of direct authority); (2) it is arrived at by engrafting the capacity-to-sue rules of local law upon traditional requirements of diversity jurisdiction, unwisely giving those local rules an unsubstantiated primacy of importance over that of the traditional requirements; (3) that the United States Supreme Court has indicated in a variety of contexts that existence of diversity jurisdiction and capacity to sue are distinct problems, the latter of which properly assumes importance *after* the forum having jurisdiction is established; (4) the court's apparent reliance upon Rule 17(b) is probably erroneous in light of the

clear thrust of Rule 82; (5) the exception permits state courts and lawmakers to "determine the perimeters of federal jurisdiction"; (6) it would cause disparate treatment of litigants in the vindication of their interests in the federal courts; (7) it introduces doubt and uncertainty into the determination of the existence of diversity jurisdiction; (8) it finds no support in the intent of 28 U.S.C. § 1332 and is quite clearly contrary to congressional intent underlying that statute to make diversity jurisdiction available only in strict conformity to statutory requirements; (9) the absence of any "convincing policy rationales" for the exception; (10) the existence of substantial reasons militating against the adoption of the exception; and (11) the absence of any juridical recognition of the exception from the United States Supreme Court. *Carlsberg,* 554 F.2d at 1260–62. All of these objections to the exception seem to this Court to be well taken and, in the aggregate, they constitute an overwhelming rational predicate for rejection of the exception.

6. The same argument has also been rejected repeatedly by well-reasoned opinions of other courts: *Trent Realty Associates v. First Federal Savings and Loan Association,* 657 F.2d 29, 32 (3d Cir.1981); *Elston Investment Ltd. v. David Altman Leasing Corp.,* 731 F.2d 436, 438 (7th Cir.1984); *Stouffer,* 859 F.2d at 77 (8th Cir. 1988); *Sage Investors v. Group W Cable, Inc.,* 666 F.Supp. 186, 188 (D.Ariz.1986).

of organization displayed by the Court in *Navarro* is consistent with its earlier reasoning in addressing questions concerning the citizenship of unincorporated associations. For example, in determining the citizenship of an unincorporated labor union, the Court declined to decide whether the union was, as a practical matter, indistinguishable from a corporation. *United Steelworkers of America v. R.H. Bouligny, Inc.*, 382 U.S. 145 ... [86 S.Ct. 272, 15 L.Ed.2d 217] [omitting citations] (1965). Rather, the Court in *United Steelworkers* analyzed the jurisdictional issue solely on the basis of the principles applicable to the form in which the union chose to do business, that of an unincorporated association ...

Although the Court in *Navarro* did, in the context of applying the law relating to trusts, look at issues including title and management of assets and control of litigation, ... [the Court] did not indicate that these questions should be addressed in determining the citizenship of an unincorporated association. To the contrary, the Court in *Navarro* reiterated the standards it had established previously concerning such organizations ... Thus, the Court in *Navarro* 'took pains to reassert the strict *Great Southern* rule' ...

It may not be illogical to contend that, as a matter of policy, a large multi-state general partnership should be treated like a corporation or an express trust for diversity purposes. Since 1789, diversity jurisdiction has existed to protect nonresident litigants from local prejudice and perceived professional inferiority of state courts ... Corporations receive the benefit of access to the federal courts on the basis of diversity jurisdiction in all but one or two states ... [y]et the present rule concerning unincorporated associations may exclude a large, multi-state partnership like Touche Ross from receiving the benefit of diversity jurisdiction in virtually every state.

It might be argued in opposition to these contentions that since 1789 state courts have been deemed appropriate forums for all actions, including those presenting federal questions. Judiciary Act of 1789, Ch. 20 § 25, 1 Stat. 73, 85 ... The present law concerning the citizenship of general partnerships arguably also provides a level of predictability concerning jurisdiction which is important to both prospective plaintiffs and defendants. Adoption of a rule requiring an analysis of the internal arrangements regarding the relative roles of different general partners in order to decide the citizenship of a general partnership for the purpose of any particular case would inject a potentially time-consuming and expensive litigable issue into the early stage of each case involving a large partnership ...

[T]he Supreme Court stated in 1965, that '[w]e are of the view that these arguments, however, appealing, are addressed to an inappropriate forum, and that pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts ...' Thus the Supreme Court has plainly stated its view that any expansion of the rules for determining diversity of citizenship of unincorporated associations should come from the legislative rather than the judicial process.

*Touche Ross & Co.*, 613 F.Supp. at 251–53 (omitting citations and footnotes). This Court is fully persuaded by these reasons, both analytical and pragmatic, that the "functional analysis" standard urged by the Defendants herein is not mandated by *Navarro* in determining whether diversity exists where one or more parties are limited partnerships. This conclusion is reinforced by concerns of a similar vein expressed in *Stouffer*:

No one suggests that Congress has ever intended diversity jurisdiction to extend to partnerships whose limited partners include citizens of the same state as an opposing party ...

Practical considerations also favor this rule that treats all limited partnerships alike for jurisdictional purposes. This bright-line rule will enable the parties and counsel contemplating litigation in-

volving a limited partnership to determine readily whether a limited partner's citizenship will preclude diversity jurisdiction. The contrary rule of the Second and Fifth Circuits, requiring a case-by-case determination whether limited partners are real parties to the controversy, would often mandate an evidentiary hearing on the threshold issue of jurisdiction. Our rule thus enhances predictability of result and promotes judicial economy.

*Stouffer,* 859 F.2d at 76–77 (omitting citations). The Court is satisfied that these factors [7] persuasively demonstrate that the United States Supreme Court had no intention to reach out in *Navarro* so far as to disturb the established modality of analysis for determining if diversity exists where an unincorporated association is the party at issue, nor to take limited partnerships outside the scope of the rule that is its result. That result, as reached in *Colonial Realty Corp. v. Bache & Co., supra,* is as demonstrated *supra* at 387 n. 5, without precedent or reason. As the rule is reached in *Mesa,* 797 F.2d 238, that result is the product of an overly broad and demonstrably erroneous reading of *Navarro.*[8]

The Court concludes that Defendant Polaris Industries Partners, L.P. cannot demonstrate the existence of complete diversity

---

**7.** An even more compelling factor, and one that has apparently been everywhere overlooked, is that the strict holding of *Navarro,* as dictated by its facts, when translated from the context of express business trusts to that of limited partnerships is not operative to change the "unincorporated association" rule's application! Any attentive reading of the *Navarro* opinion will make it clear that suit there was not brought by the entity (*e.g.,* the business trust) as plaintiff but by the eight trustees *as plaintiffs.* They had the legal authority under the declaration of trust to sue in their *own names* as trustees. *Navarro,* 446 U.S. at 459, 100 S.Ct. at 1781. The promissory note and letter of commitment upon which suit was brought runs to the named plaintiffs as trustees. *Id.* The Court framed the issue in the first sentence of the opinion as "whether the *trustees* of a business trust *may invoke* the diversity jurisdiction of the federal courts *on the basis of their own citizenship* rather than that of the trustees' beneficial shareholders." *Id.,* 446 U.S. at 458, 100 S.Ct. at 1780–81 (emphasis added). Thus, it was not the entity that was the party plaintiff there; rather, it was the *individual* trustees invoking, as the Court said, diversity jurisdiction *on the basis of their own citizenship.*

When the Court resolved the issue, as it had itself posed it, in the affirmative, the result was that diversity jurisdiction in the case was determined by the citizenship of the *individual trustees,* not by that of the trust entity itself. Thus, assuming that there is any basis to permit translation of a rule expressly and narrowly framed for application to express business trusts to limited partnerships, the *holding* of the case reflects no deviation from the conventional application of the "unincorporated association" rule. Under either the holding or the conventional rule, it is the citizenship of the *member* of the entity, not that of the entity itself, which controls the determination of diversity jurisdiction; in one case the individual trustee and, in the other, the individual partner.

**8.** Defendant has also suggested that diversity in this case cannot be destroyed by party realignment, citing *Gore v. Stenson,* 616 F.Supp. 895 at 900 (D.Tex.1984), since Plaintiff cannot be permitted to realign itself as a defendant to destroy diversity. In *Gore,* the court considered a challenge to existence of diversity by a Texas resident plaintiff. It is unclear from the opinion whether the partnership itself was joined as a party, but it is clear that the general partner was a citizen of the State of Georgia. The court treated the challenge to diversity as an effort by the plaintiff to align herself as a defendant. "Therefore, it is clear in this case that plaintiff cannot sue the entity ... and thereby destroy diversity." *Id.* at 899. The logic by which that conclusion is reached completely escapes this Court.

This Court finds the one-paragraph analysis on the point rendered in *Gore,* which cites no precedent, to be unfounded and unpersuasive. The case is clearly wrong by the overwhelming weight of the case law, which establishes that where a limited partnership is on one side of the case, diversity cannot exist if any one of its partners is on the opposite side of the case. *Gore* can be, at best, viewed as precedent "principally concerned [with] preventing a plaintiff from defeating diversity jurisdiction by adding a partnership as a defendant along with an individual partner defendant from another state." *DAB Associates v. Bakst,* 682 F.Supp. 1231 at 1233 (N.D.Ga.1988). As such, it is to be, if followed at all, restricted to its narrow facts. *Id.* There is no indication here of a bad faith joinder of Polaris Industries Partners, L.P. for the purpose of destroying diversity.

More decisive here, however, is the fact that there is no realignment of the parties required here in order to demonstrate that diversity does not exist in the suit as originally brought. Plaintiff sued in state court various entities, including Polaris Industries Partners, L.P., in which Plaintiff is a limited partner. As the case was initially postured in state court, diversity never existed under the applicable law.

between itself and its own limited partner, Nelson & Small, Inc., the only party plaintiff, supporting removal of this case to this Court. Complete diversity being absent, *see Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 266, 2 L.Ed. 435 (1806), the case must be remanded to the state court.[9]

The Order of Remand entered on April 7, 1989.[10]

So ORDERED.

### ORDER REMANDING CASE TO STATE COURT AND VACATING TEMPORARY RESTRAINING ORDER

This matter is before the Court for decision on Plaintiff's Motion to Remand, filed on March 30, 1989 (Docket No. 5),[1] which is objected to by Defendants (Docket No. 4M). After a full review of the written submissions of the parties on said motion, it is hereby ORDERED that Plaintiff's Motion to Remand be, and it is hereby, GRANTED. The Court's Memorandum of Decision setting forth its reasons for such action will follow in due course. It is FURTHER ORDERED that this Court's Temporary Restraining Order, entered on March 30, 1989, be, and it is hereby, VACATED, as entered without jurisdiction.

It is FURTHER ORDERED that the hearing now scheduled for April 10, 1989 on Plaintiff's Motion for Preliminary In-

junction is hereby CANCELED. It is hereby ORDERED that this action be

REMANDED forthwith to the Superior Court in and for the County of Cumberland and State of Maine for lack of diversity jurisdiction and as improvidently removed.

Dated at Portland, Maine this 7th day of April, 1989.

---

9. In its initial brief, Defendants asserted that federal question jurisdiction was present here because of a recital in the *ad damnum* of the Plaintiff's complaint of a request for federal antitrust relief. However, as Plaintiff correctly points out in reply, the only antitrust claims actually alleged in the complaint are based upon state antitrust law. No federally based claim is asserted by the complaint. Plaintiff's counsel acknowledges this recital in the *ad damnum* to be a clerical error.

10. *See* this Court's Order Remanding Case to State Court and Vacating Temporary Restraining Order dated April 7, 1989, and attached hereto as Exhibit A.

1. After preliminary consideration of the written submissions on the Motion to Remand, the Court called a conference of counsel on April 6, 1989, and indicated to counsel that it had been engaged in considering the Motion to Remand but could not finally resolve the issues generated thereby prior to the expiration of the Temporary Restraining Order or the commencement of a hearing on Plaintiff's Motion for Prelimi-

nary Injunction, now scheduled for hearing on April 10, 1989 at 10:00 a.m.

The Court requested counsel's agreement, pursuant to Fed.R.Civ.P. 65(b), to an extension of the Temporary Restraining Order for a period of ten (10) days in order to afford the Court adequate opportunity to complete its research, analysis, and the writing of a Memorandum of Decision adjudicating the issues generated by the Motion to Remand. Defendants' counsel declined to so agree.

Accordingly, the Court herewith enters this order, acting upon the Court's conclusion that the case is properly to be remanded, with the understanding that the Court's Memorandum of Decision setting forth the reasons therefor is to follow. The purpose of such action is to conserve judicial resources and the time and resources of counsel and the parties by obviating the need to conduct a hearing on Plaintiff's Motion for a Preliminary Injunction since the Court is satisfied that the action is properly to be remanded as improvidently removed.