# UNITED STEELWORKERS OF AMERICA, AFL-CIO v. R. H. BOULIGNY, INC.

No. 19.   Argued October 21, 1965.—Decided November 22, 1965.

*Michael H. Gottesman* argued the cause for petitioner. With him on the briefs were *David E. Feller, Bernard Kleiman, Elliott Bredhoff* and *Jerry D. Anker.*

*Joseph W. Grier, Jr.,* argued the cause for respondent. With him on the brief was *Gaston H. Gage.*

Mr. Justice Fortas delivered the opinion of the Court.

Respondent, a North Carolina corporation, brought this action in a North Carolina state court. It sought $200,000 in damages for defamation alleged to have occurred during the course of the United Steelworkers' campaign to unionize respondent's employees. The Steelworkers, an unincorporated labor union whose principal place of business purportedly is Pennsylvania, removed the case to a Federal District Court.[1] The union asserted not only federal-question jurisdiction, but that for purposes of the diversity jurisdiction it was a citizen of Pennsylvania, although some of its members were North Carolinians.

The corporation sought to have the case remanded to the state courts, contending that its complaint raised no federal questions and relying upon the generally prevailing principle that an unincorporated association's citizenship is that of each of its members. But the District Court retained jurisdiction. The District Judge noted "a trend to treat unincorporated associations in the same manner as corporations and to treat them as citizens of the state wherein the principal office is located." Divining "no common sense reason for treating an unincorporated national labor union differently from a corporation," he declined to follow what he styled "the poorer reasoned but more firmly established rule" of *Chapman* v. *Barney,* 129 U. S. 677.

On interlocutory appeal the Court of Appeals for the Fourth Circuit reversed and directed that the case be re-

---

[1] 28 U. S. C. § 1441 (a) (1964 ed.) provides: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending:"

manded to the state courts. 336 F. 2d 160. Certiorari was granted, 379 U. S. 958, so that we might decide whether an unincorporated labor union is to be treated as a citizen for purposes of federal diversity jurisdiction, without regard to the citizenship of its members.[2] Because we believe this properly a matter for legislative consideration which cannot adequately or appropriately be dealt with by this Court, we affirm the decision of the Court of Appeals.

Article III, § 2, of the Constitution provides:

"The judicial Power shall extend . . . to Controversies . . . between Citizens of different States . . . ."

Congress lost no time in implementing the grant. In 1789 it provided for federal jurisdiction in suits "between a citizen of the State where the suit is brought, and a citizen of another State." [3]  There shortly arose the question as to whether a corporation—a creature of state law—is to be deemed a "citizen" for purposes of the statute. This Court, through Chief Justice Marshall, initially responded in the negative, holding that a corporation was not a "citizen" and that it might sue and be sued under the diversity statute only if none of its shareholders was a co-citizen of any opposing party.

---

[2] Petitioner does not here challenge the Court of Appeals' finding with respect to the absence of federal-question jurisdiction. Mention of this finding is omitted from the "statement of the case" portion of petitioner's brief. Instead, petitioner expresses an intention, on remand of this case, to raise a different issue—that libel suits brought against unions for conduct arising in the course of an organizational campaign are within the exclusive jurisdiction of the National Labor Relations Board and may not be the subject of litigation, at least initially, in state or federal court. Compare *Linn* v. *United Plant Guard Workers of America, Local 114,* 337 F. 2d 68 (C. A. 6th Cir.), cert. granted, 381 U. S. 923, with *Meyer* v. *Joint Council 53, Intern'l Bro. of Teamsters,* 416 Pa. 401, 206 A. 2d 382, petition for cert. dismissed under Rule 60, *post,* p. 897.

[3] 1 Stat. 78.

148

*Bank of the United States* v. *Deveaux,* 5 Cranch 61. In 1844 the Court reversed itself and ruled that a corporation was to be treated as a citizen of the State which created it. *Louisville, C. & C. R. Co.* v. *Letson,* 2 How. 497. Ten years later, the Court reached the same result by a different approach. In a compromise destined to endure for over a century,[4] the Court indulged in the fiction that, although a corporation was not itself a citizen for diversity purposes, its shareholders would conclusively be presumed citizens of the incorporating State. *Marshall* v. *Baltimore & O. R. Co.,* 16 How. 314.

Congress re-entered the lists in 1875, significantly expanding diversity jurisdiction by deleting the requirement imposed in 1789 that one of the parties must be a citizen of the forum State.[5] The resulting increase in the quantity of diversity litigation, however, cooled enthusiasts of the jurisdiction, and in 1887 and 1888 Congress enacted sharp curbs. It quadrupled the jurisdictional amount, confined the right of removal to non-resident defendants, reinstituted protections against jurisdiction by collusive assignment, and narrowed venue.[6]

---

[4] See 72 Stat. 415 (1958), 28 U. S. C. § 1332 (c), providing that: "For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

[5] 18 Stat. 470.

[6] 24 Stat. 552, 553, as amended by 25 Stat. 434. On the historical background of these changes in the diversity jurisdiction see generally, Moore and Weckstein, Diversity Jurisdiction: Past, Present, and Future, 43 Tex. L. Rev. 1 (1964); Moore and Weckstein, Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited, 77 Harv. L. Rev. 1426 (1964); Hart and Wechsler, The Federal Courts and the Federal System 891–943 (1953).

It was in this climate that the Court in 1889 decided *Chapman* v. *Barney, supra.* On its own motion the Court observed that plaintiff was a joint stock company and not a corporation or natural person. It held that although plaintiff was endowed by New York with capacity to sue, it could not be considered a "citizen" for diversity purposes. 129 U. S., at 682.[7]

In recent years courts and commentators have reflected dissatisfaction with the rule of *Chapman* v. *Barney.*[8] The distinction between the "personality" and "citizenship" of corporations and that of labor unions and other unincorporated associations, it is increasingly argued, has become artificial and unreal. The mere fact that a corporation is endowed with a birth certificate is, they say, of no consequence. In truth and in fact, they point out, many voluntary associations and labor unions are indistinguishable from corporations in terms of the reality

---

[7] Equally responsive to the congressional intent as manifested in 1887 and 1888 was the Court's decision in 1892 in *Shaw* v. *Quincy Mining Co.,* 145 U. S. 444, holding that in a diversity suit a corporation could only be sued in the State of incorporation, even though its principal place of business was elsewhere.

[8] See *Mason* v. *American Express Co.,* 334 F. 2d 392 (C. A. 2d Cir.); 78 Harv. L. Rev. 1661 (1965); 53 Geo. L. J. 513 (1965); 65 Col. L. Rev. 162 (1965); *American Fed. of Musicians* v. *Stein,* 213 F. 2d 679, 685–689 (C. A. 6th Cir.), cert. denied, 348 U. S. 873, suggesting that a trial court might find a union to be a citizen for diversity purposes—a suggestion rejected on remand, 183 F. Supp. 99 (D. C. M. D. Tenn.); and *Van Sant* v. *American Express Co.,* 169 F. 2d 355 (C. A. 3d Cir.); Comment, 1965 Duke L. J. 329; Note, Unions as Juridical Persons, 66 Yale L. J. 712, 742–749 (1957). Cf. *Swan* v. *First Church of Christ, Scientist, in Boston,* 225 F. 2d 745 (C. A. 9th Cir.). But see *Brocki* v. *American Express Co.,* 279 F. 2d 785 (C. A. 6th Cir.), cert. denied, 364 U. S. 871; *Underwood* v. *Maloney,* 256 F. 2d 334 (C. A. 3d Cir.), cert. denied, 358 U. S. 864; *A. H. Bull Steamship Co.* v. *NMEBA,* 250 F. 2d 332 (C. A. 2d Cir.), each of which takes a more conventional view.

of function and structure, and to say that the latter are juridical persons and "citizens" and the former are not is to base a distinction upon an inadequate and irrelevant difference. They assert, with considerable merit, that it is not good judicial administration, nor is it fair, to remit a labor union or other unincorporated association to vagaries of jurisdiction determined by the citizenship of its members and to disregard the fact that unions and associations may exist and have an identity and a local habitation of their own.

The force of these arguments in relation to the diversity jurisdiction is particularized by petitioner's showing in this case. Petitioner argues that one of the purposes underlying the jurisdiction—protection of the nonresident litigant from local prejudice—is especially applicable to the modern labor union. According to the argument, when the nonresident defendant is a major union, local juries may be tempted to favor local interests at its expense. Juries may also be influenced by the fear that unionization would adversely affect the economy of the community and its customs and practices in the field of race relations. In support of these contentions, petitioner has exhibited material showing that during organizational campaigns like that involved in this case, localities have been saturated with propaganda concerning such economic and racial fears. Extending diversity jurisdiction to unions, says petitioner, would make available the advantages of federal procedure, Article III judges less exposed to local pressures than their state court counterparts, juries selected from wider geographical areas, review in appellate courts reflecting a multistate perspective, and more effective review by this Court.

We are of the view that these arguments, however appealing, are addressed to an inappropriate forum, and that pleas for extension of the diversity jurisdiction to

hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts.

Petitioner urges that in *Puerto Rico* v. *Russell & Co.,* 288 U. S. 476, we have heretofore breached the doctrinal wall of *Chapman* v. *Barney* and, that step having been taken, there is now no necessity for enlisting the assistance of Congress. But *Russell* does not furnish the precedent which petitioner seeks. The problem which it presented was that of fitting an exotic creation of the civil law, the *sociedad en comandita,* into a federal scheme which knew it not. The Organic Act of Puerto Rico conferred jurisdiction upon the federal court if all the parties on either side of a controversy were citizens of a foreign state or "citizens of a State, Territory or District of the United States not domiciled in Puerto Rico." [9] All of the *sociedad's* members were nonresidents of Puerto Rico, and jurisdiction lay in the federal court if they were the "parties" to the action. But this Court held that the *sociedad* itself, not its members, was the party, doing so on a basis that is of no help to petitioner. It did so because, as Justice Stone stated for the Court, in "[t]he tradition of the civil law, as expressed in the Code of Puerto Rico," "the *sociedad* is consistently regarded as a juridical person." 288 U. S., at 480–481. Accordingly, the Court held that the *sociedad,* Russell & Co., was a citizen domiciled in Puerto Rico, within the meaning of the Organic Act, and ordered the case remanded to the insular courts. It should be noted that

-----

[9] The federal district court in Puerto Rico had jurisdiction "of all cases cognizable in the district courts of the United States" and "of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States not domiciled in Puerto Rico . . . ." § 41, Organic Act of Puerto Rico of 1917, 39 Stat. 965 (now 48 U. S. C. § 863). See 70 Stat. 658 (1956), amending 28 U. S. C. § 1332, relating to the treatment of the Commonwealth of Puerto Rico for diversity purposes.

the effect of *Russell* was to contract jurisdiction of the federal court in Puerto Rico.[10]

If we were to accept petitioner's urgent invitation to amend diversity jurisdiction so as to accommodate its case, we would be faced with difficulties which we could not adequately resolve. Even if the record here were adequate, we might well hesitate to assume that petitioner's situation is sufficiently representative or typical to form the predicate of a general principle. We should, for example, be obliged to fashion a test for ascertaining of which State the labor union is a citizen. Extending the jurisdiction to corporations raised no such problem, for the State of incorporation was a natural candidate, its arguable irrelevance in terms of the policies underlying the jurisdiction being outweighed by its certainty of application. But even that easy and apparent solution did not dispose of the problem; in 1958 Congress thought it necessary to enact legislation providing that corporations are citizens both of the State of incorporation and of the State in which their principal place of business is located.[11] Further, in contemplating a rule which would accommodate petitioner's claim, we are acutely aware of the complications arising from the circumstance that petitioner, like other labor unions, has local as well as national organizations and that these,

[10] As the Court noted in *Russell,* 288 U. S., at 482, the effect of its decision was to prevent nonresidents from organizing *sociedads* to carry on business in Puerto Rico and then "remove from the Insular Courts controversies arising under local law." The Court of Appeals for the Second Circuit in *Mason,* 334 F. 2d, at 397, n. 8, seems to assert that *Russell* had the effect of broadening the diversity jurisdiction. We do not agree. At the time *Russell* was decided, Puerto Rico was not considered a "State" for purposes of the federal diversity jurisdiction statute. Accordingly, a *sociedad,* although recognized as a citizen of Puerto Rico in *Russell,* could not avail itself of the general diversity statute.

[11] See note 4, *supra.*

perhaps, should be reckoned with in connection with "citizenship" and its jurisdictional incidents.[12]

Whether unincorporated labor unions ought to be assimilated to the status of corporations for diversity purposes, how such citizenship is to be determined, and what if any related rules ought to apply, are decisions which we believe suited to the legislative and not the judicial branch, regardless of our views as to the intrinsic merits of petitioner's argument—merits stoutly attested by widespread support for the recognition of labor unions as juridical personalities.[13]

We affirm the decision below.

---

[12] The American Law Institute has proposed that for diversity purposes unincorporated associations be deemed citizens of the States in which their principal places of business are located, but that they be disabled from initiating diversity litigation in States where they maintain "local establishments."  ALI, Study of the Division of Jurisdiction Between State and Federal Courts, Proposed Final Draft No. 1 (1965), §§ 1301 (b)(2) and 1302 (b).  Compare 29 U. S. C. § 185 (c), which provides: "For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."

[13] See, e. g., United Mine Workers v. Coronado Coal Co., 259 U. S. 344; Rule 17 (b) of the Fed. Rules Civ. Proc.; ALI, Study, supra; 3 Moore, Federal Practice ¶ 17.25 (2d ed., 1964); Note, Unions as Juridical Persons, 66 Yale L. J. 712 (1957).  Cf. 78 Stat. 445 (1964), which amended 28 U. S. C. § 1332 (c) to confer citizenship upon insurers, "whether incorporated or unincorporated," involved in direct-action suits; Note, Developments in the Law—Judicial Control of Actions of Private Associations, 76 Harv. L. Rev. 983, 1080–1100 (1963).