**CERBERUS PARTNERS, L.P., et al.**

v.

**GADSBY & HANNAH, et al.**

No. CA 97–033ML.

United States District Court,
D. Rhode Island.

Aug. 19, 1997.

Medeiros, Karmen & Sanford, Inc. by Fausto C. Anguilla, Providence, RI, Richards, Spears, Kibbe & Orbe by Brian S. Fraser and Kenneth P. Held, New York City, for Plaintiffs.

Higgins, Cavanagh & Cooney by John T. Walsh, Jr. and James A. Ruggieri, Winograd, Shine & Zacks by Richard Land, Providence, RI, for Defendants.

## ORDER

LISI, District Judge.

The Findings and Recommendation of United States Magistrate Judge Robert W. Lovegreen filed on **July 25, 1997** in the above-captioned matter is accepted pursuant to Title 28 United States Code § 636(b)(1)

## REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

This matter requires the Court to examine the citizenship of a limited partnership for the purpose of ascertaining the existence of this court's diversity jurisdiction and therein to determine the propriety of the removal of this case from the state court. Plaintiffs (collectively "Cerberus") sued the two defendant law firms, Gadsby & Hannah and Schatz, Schatz, Ribikoff & Kotkin and their current and former partners (collectively "Gadsby & Hannah"), in Rhode Island Superior Court seeking damages for alleged legal malpractice. Gadsby & Hannah then re-moved the case to this court. Cerberus now seeks remand due to the absence of complete diversity of citizenship between the parties.

This matter has been referred to me for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local Rule of Court 32(c). A hearing was held on July 11, 1997. After listening to the arguments of counsel and examining the memoranda submitted, I recommend that the motion for remand be granted.

## BACKGROUND

Cerberus is the successor-in-interest to certain creditors who had retained the legal counsel of Gadsby & Hannah to file certain financing statements relating to the perfection of security interests in collateral pledged by certain debtors. When the debtors filed a petition for reorganization under the United States Bankruptcy Code, Cerberus alleges it was compelled to settle its claims for less than the full amount due under the controlling credit agreement. On December 19, 1996, Cerberus sued Gadsby Hannah for legal malpractice in Rhode Island Superior Court alleging that the lawyers failed to perfect Cerberus' security interests in certain collateral. On January 19, 1997, Gadsby & Hannah filed a notice of removal to federal district court based on diversity of citizenship.

The defendant law firm of Gadsby & Hannah is a limited liability partnership organized and existing under the laws of Massachusetts. Prior to its dissolution on June 15, 1996, the defendant law firm of Schatz, Schatz, Ribicoff & Kotkin was a partnership organized and existing under the laws of Connecticut. The individual partners of both law firms include citizens of Massachusetts and Connecticut.

The plaintiff entities Cerberus Partners, L.P., Chase Manhattan Bank, Merrill Lynch, Pierce, Fenner & Smith, Inc., and Silver Oak Capital, L.L.C., are financial institutions organized and existing under the laws of Delaware. D.K. Acquisitions Partners, L.P. is organized and existing under the laws of New York, and Goldman Sachs Credit Partners, L.P. ("GSCP"), the focus of this juris-

dictional query, is organized and existing under the laws of Bermuda. All six institutions have their principal places of business in New York.

GSCP is a limited partnership comprised of a general partner, GSEM Partners ("GSEM"), and a limited partner, the Goldman Sachs Group ("GS Group"). GSEM's general partners include Donald C. Opatrny, a citizen of Connecticut. GS Group's limited partners include Dan Sullivan, a citizen of Massachusetts. GS Group's limited partners also include the John Hancock Mutual Life Insurance Company ("Hancock Mutual"), incorporated in Massachusetts with its principal place of business in the same, and the Hartford Life Insurance Company ("Hartford Life"), incorporated in Connecticut with its principal place of business in the same.

## DISCUSSION

Under the federal removal statute, a defendant may remove any civil action filed in state court over which a federal district court holds original jurisdiction. 28 U.S.C. § 1441(a). If at any time before final judgment, however, it appears that removal was improper due to a lack of original jurisdiction in the district court, the case must be remanded to the state tribunal from which it was removed. 28 U.S.C. § 1447(c). There being no federal question at issue in this case, the key to the propriety of removal is the existence of diversity of citizenship among the parties. Since its enactment in 1789, the diversity statute, now found at 28 U.S.C. § 1332(a), has required "complete diversity" of citizenship, *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187, 110 S.Ct. 1015, 1016–17, 108 L.Ed.2d 157 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)), that is, all plaintiffs must have a different citizenship from all defendants.

In *Carden*, a limited partnership organized under the laws of Arizona sued two citizens of Louisiana in federal court based upon diversity of citizenship. Defendants moved to dismiss on the ground that one of the plaintiff's limited partners was also a citizen of Louisiana. The United States Supreme Court held that unlike a corporation, whose citizenship depends upon the situs of incorporation and its principal place of business, the citizenship of a limited partnership is determined by the citizenship of its general *and* limited partners. *Id.* at 187–92, 110 S.Ct. at 1016–20; *see Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 455–57, 20 S.Ct. 690, 692–93, 44 L.Ed. 842 (1900).

Here, unlike *Carden*, the court is faced with a three-tiered limited partnership, in that the GSCP limited partnership (the first tier) is comprised of a general partnership, GSEM, and a limited partnership, GS Group (the second tier), each of which, in turn, is comprised of individual and corporate general and limited partners (the third tier). The question in this case is whether the four non-diverse members of the third tier destroy diversity for the whole. Cerberus contends that the holding in *Carden* requires that the citizenship of the third tier members be considered for diversity. If so, it is evident that complete diversity is lacking: Opatrny and Hartford Life, and Sullivan and Hancock Mutual are respectively citizens of Connecticut and Massachusetts, while certain partners of both defendant law firms are also citizens of Connecticut and Massachusetts. To avoid such a result, Gadsby & Hannah presses for a narrow reading of *Carden* and sets forth several related arguments for ignoring these four non-diverse, third tier partners. Because Gadsby & Hannah seeks to establish the existence of federal jurisdiction, they bear the burden of proving as much. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992).

First, Gadsby & Hannah pierce to the substance of the third-tier members' interest in GS Group and argue that because Sullivan, Hancock Mutual, and Hartford Life do not participate directly in the profits and losses of GS Group, they should not be considered for diversity purposes. While these parties' interests may not be controlling within the organization, *Carden* does not prescribe a distinct level of control that one must have to be considered for diversity purposes. In the Court's decision to consider both general and limited partners when analyzing the citizenship of a limited partnership, a majority held

that "diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members'". *Carden,* 494 U.S. at 195, 110 S.Ct. at 1021 (quoting *Chapman v. Barney,* 129 U.S. 677, 682, 9 S.Ct. 426, 427–28, 32 L.Ed. 800 (1889)). To support their holding, the Court opined, "[n]o doubt some members of the joint stock company in *Chapman,* the labor union in *[United Steelworkers of America v. R.H.] Bouligny [Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965)]* , and the limited partnership association in *Great Southern* exercised greater control over their respective entities than other members. But such considerations have played no part in our decisions." *Id.* at 192, 110 S.Ct. at 1019–20. The Court flatly rejected a degree-of-control test to determine which partners should be considered for diversity purposes. Gadsby & Hannah stress that the *Carden* Court faced a different partnership structure than the one posed by the instant case. It is true that in comparison to those limited partners of the single-tiered partnership examined in *Carden,* the third-tier partners at issue here are considerably removed from the forefront of the GSCP limited partnership. Nevertheless, *Carden* makes no references as to whether some limited or general partners should be considered while others should not based on their control of profits and losses. It was the very basis of the *Carden* decision that the Court had "never held that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal court based on the citizenship of some but not all of its members." *Id.* Therefore, following *Carden* and recognizing that the Court did not limit its holding to partners with substantive control of the partnership, here, too, this court must look to *all* of GSCP's members. The argument that the citizenship of Sullivan, Hancock Mutual, and Hartford Life should not be considered for diversity purposes is unpersuasive.

Next, Gadsby & Hannah argue that the court should disregard Opatrny for diversity purposes because his .75 per cent share of the GS Group's total profits and losses is "minuscule" and otherwise *de minimis.* Again, the *Carden* Court considered "all the members" of an entity when analyzing diversity. *Id.* at 195, 110 S.Ct. at 1021. The Court did not set out a benchmark interest above which a partner must own in order to be considered for diversity purposes. Opatrny's .75 per cent interest is not insufficient to consider his citizenship because this Court will consider all, not some of the members of GSCP. Moreover, Defendants have not cited to any case law that provides a percentage of interest which a partner must possess in order to qualify for diversity purposes. The specific amount of Opatrny's interest is irrelevant under *Carden;* therefore, this Court must consider his Connecticut citizenship which alone suffices to destroy diversity.

Third, Gadsby & Hannah assert that *Carden* does not address the issue of multi-tiered partnerships and that this court, therefore, should not apply *Carden* to this case. Again, defendants fail to produce a single case that supports their position. Instead, they rely on what they read as limiting language in *Carden.* Defendants seize upon the phrases "... entity, suing or being sued in its own name ...," *id.* at 192, 110 S.Ct. at 1019, "the entity", *id.* at 195, 110 S.Ct. at 1021, and "one ... entity", *id.* at 188 n. 1, 110 S.Ct. at 1017, n. 1, as indicative that *Carden* does not apply to multi-tiered partnerships. Defendants assert that this language requires courts to look only to the next, immediate level of members of the plaintiff entity, in this case, GS Group and GSEM, and then to probe no further. The Court, however, did not instruct the lower courts to look only to the next level of members, but to all of the members of the entity. The language which Gadsby & Hannah cite does not support a rule which would restrict this court's consideration of diversity to the upper tiers of a multi-tiered partnership.

Furthermore, defendants cite footnote one in *Carden* as evincing the Court's framing of a narrow issue:

> The question presented today is not which of various parties before the Court should be considered for purposes of determining whether there is complete diversity of citizenship, a question that will generally be answered by application of the 'real party to the controversy' test. There are *not,* as the dissent assumes, multiple respondents

before the Court, but only *one:* the artificial entity called Arkoma Associates, a limited partnership.

*Id.* (emphasis in original). The question framed by the Court was what *parties* were real to the suit, not what *members* of the parties were real to the suit. This is not a directive to pick-and-choose among the members of the GSCP limited partnership. The Court expressly instructed the lower courts examine the citizenship of all of the partnership's members. Footnote one simply emphasizes that the majority was concerned with the test for determining the citizenship of the partnership's members, and distinguishing this from the dissent's assertion that there are several parties to the suit and the Court must decide which is a "real party." *See id.* at 198–209, 110 S.Ct. at 1022–28 (O'Connor, J. dissenting). This language relied on by defendants fails to demonstrate that *Carden's* diversity analysis is limited only to the upper tiers of a partnership.

At least three other district courts have applied *Carden* to multi-tiered partnerships. In one instance, the court rejected defendants attempt to distinguish *Carden* based on plaintiff's two tier structure and followed *Carden* by considering the citizenship of all of the partners. *Richardson v. Edward D. Jones & Co.,* 744 F.Supp. 1023, 1025 (D.Colo. 1990). More recently, another court noted that, while a tiered partnership was not expressly considered in *Carden*, "[t]here is nothing in *Carden* to indicate that its holding extends only to certain levels of limited partnerships." *Magnolia Management Corp., v. Quest Rescue Partners–8, L.P.,* 792 F.Supp. 45, 49 (S.D.Miss.1992). *See Cooper v. Parsky,* No. 95CIV10543, 1997 WL 242534, *7 (S.D.N.Y. Jan. 8, 1997) (report and recommendation of Magistrate Judge), *adopted by Cooper v. Parsky,* 1997 WL 150934 (S.D.N.Y. March 27, 1997) (holding that nondiverse third-tier partner destroys diversity of citizenship).

As a final matter, Gadsby & Hannah raise valid policy concerns regarding the fact that, pursuant to the foregoing analysis, multi-tiered partnerships could completely avoid federal diversity jurisdiction by simply enlisting partners, at any level of the organization's structure, with citizenship in all fifty states. Judge Young of the District of Massachusetts echoed this concern:

> This Court is particularly troubled that a Big Six accounting firm which operates offices within every state in the United States has effectively immunized itself from the reach of the diversity jurisdiction of the federal courts simply by organizing itself as a limited liability partnership rather than a corporation.

*Reisman v. KPMG Peat Marwick, L.L.P.,* 965 F.Supp. 165, 177 (D.Mass.1997). Nonetheless, Judge Young went on to rule that the court must abide by the federal diversity statute and can not reach another result to support this concern "until Congress addresses the jurisdictional implications of this new class of business entities . . . ." *Id.*

This court is similarly disturbed by the result which the diversity statute currently produces in cases such as this one and *Reisman.* The plain language of the diversity statute provides, however, that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, . . ., and is between—citizens of different States . . . ." 28 U.S.C. § 1332(a)(1) (Supp.1997). Since enactment, the United States Supreme Court has continuously held that the statute requires complete diversity. While section 1332(a) may produce a potentially undesirable result, this court cannot legislate an amendment to the diversity statute. What's more, the statute has not gone unrevisited by the legislature. Congress amended 28 U.S.C. § 1332(a) on October 19, 1996 to raise the amount in controversy requirement to $75,000. Congress had available to it then the *Carden* decision and had a chance to consider the implications of the case. Congress did not, however, amend any such portion of the statute that impacts this case.

In sum, all of Gadsby & Hannah's assertions run counter to *Carden* and find no support in any other cases. In deciding how to consider the citizenship of GSCP the court is compelled to follow *Carden,* and recognize the nondiverse citizenship of Sullivan, Opatrny, Hancock Mutual, and Hartford Life. In doing so, complete diversity is nonexistent.

This court, having no subject matter jurisdiction to hear this case, should remand the matter to the state court from whence it was improperly removed.

### CONCLUSION

For the reasons stated, I recommend that plaintiff's motion to remand be granted. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Fed.R.Civ.P. 72(b); Local Rule of Court 32. Failure to file specific objections in a timely manner constitutes a waiver of both the right to review by the district court, *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980), and the right to appeal the district court's decision, *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986) (per curiam).

July 25, 1997.