**RMP CONSULTING GROUP, INC.
and RMP Service Group, Inc.,
Plaintiffs,**

v.

**DATRONIC RENTAL CORPORATION,
Defendant/Third Party Plaintiff,**

v.

**BANK OF OKLAHOMA, N.A. and Henry
E. Doss, Third Party Defendants.**

No. 91–C–295–H.

United States District Court,
N.D. Oklahoma.

March 17, 1998.

RMP Consulting Group, Inc., Pro se.

RMP Service Group, Inc., Pro se.

James Lloyd Menzer, Blackwell, OK, for RMP Consulting Group, Inc. and RMP Service Group, Inc.

Bradford S. Baker, Tulsa, OK, Jerome Torshen, Mark K. Schoenfield, Torshen Schoenfield & Spreyer, Chicago, IL, for Datronic Rental Corporation, an Illinois Corporation.

John R. Long, Oklahoma City, OK, Ceylon Smith Lewis, III, Marilyn Modin Wagner, Riggs Abney Neal Turpen Orbison & Lewis, Tulsa, OK, for Henry E. Doss and Bank of Oklahoma.

### ORDER

HOLMES, District Judge.

This matter comes before the Court on the Report and Recommendation ("Report") of the United States Magistrate Judge filed on September 29, 1997. (Docket # 206). Third Party Plaintiff Datronic Rental Corporation ("Datronic") filed a motion to reconsider which was denied by Judge Joyner on February 19, 1998. The parties have filed objections to the original Report and Defendant Datronic has filed supplemental objections following the denial of the motion to reconsider.

The trial court's consideration of a magistrate's Report and Recommendation is governed by Rule 72(b) of the Federal Rules of Civil Procedure which provides in pertinent part that:

> [t]he district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommendation decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b).

Pursuant to Fed.R.Civ.P. 72(b), the Court has made a de novo review of the record, the briefs and arguments of the parties, and the Report. Based upon this review, the Court hereby adopts and affirms Judge Joyner's Report. The Court agrees that the citizenship of the limited partners of Datronic Equipment Income Fund XVI, L.P. ("the Fund"), Datronic's general partner, must be considered to properly determine whether diversity jurisdiction is present. The Court concludes that the Fund is a real and substantial party for purposes of establishing diversity jurisdiction, despite the fact that Datronic has filed a ratification under Rule 17 in which the Fund agrees to be bound by the outcome here.[1]

---

1. The Court rejects the notion that ratification under Rule 17 is broadly available to non-diverse parties as a means of avoiding the established rule that diversity jurisdiction is present only when all parties to a controversy are citizens of a different state. Indeed, it is settled law that "a primarily local controversy should be tried in the appropriate state forum and that nominal or formal parties, who do not have a significant interest in the outcome of the litigation, should not be able to use the federal courts." 6A Charles Alan Wright et al., Federal Practice and Procedure Civil 2d § 1556, at 422 (2d ed.1990). Accordingly, the Court agrees with Judge Joyner's conclusion that subject matter jurisdiction must be analyzed independently of the provisions of Rule 19.

Accordingly, the Court finds that the motion to dismiss for lack of subject matter jurisdiction filed on behalf of Bank of Oklahoma (Docket # 191) and on behalf of RMP Consulting Group, Inc., and Henry Doss (Docket # 190) must be granted for lack of subject matter jurisdiction.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

Third Party Defendant, BANK OF OKLAHOMA ("BOK"), filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. no. 191) all claims of Third Party Plaintiff, DATRONIC RENTAL CORPORATION ("Datronic"), against BOK asserting that there is no diversity of citizenship among the parties. Plaintiffs, RMP CONSULTING GROUP, INC. and RMP SERVICE GROUP, INC. (collectively referred to as "RMP"), and Third Party Defendant, HENRY E. DOSS ("Doss"), filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. no. 190) all claims of Datronic against RMP and Doss asserting that there is no diversity of citizenship among the parties. By minute order dated March 4, 1997 both motions were referred to the undersigned for Report and Recommendation and they are now ready for decision.

The jurisdictional basis for Datronic's claims is diversity of citizenship under 28 U.S.C. § 1332. At all relevant times, Datronic was the general partner of Datronic Equipment Income Fund XVI, L.P. ("the Fund"). If the citizenship of the Fund's limited partners must be considered, diversity of citizenship in this case is destroyed because certain of the Fund's limited partners are citizens of the same state as BOK, RMP and Doss. In their current motions for summary judgment, BOK, RMP and Doss argue that the citizenship of the Fund's limited partners must be considered because the Fund is an indispensable party under Fed. R.Civ.P. 17 and 19. For the reasons discussed below, the undersigned finds that the Fund is not an indispensable party under Rules 17 and 19. Nevertheless, because the undersigned finds that the Fund was substantially involved in the claims of this lawsuit, the citizenship of its limited partners must be considered. Consequently, the undersigned recommends that BOK's, RMP's and Doss' motions to dismiss for lack of subject matter jurisdiction be **GRANTED.**

### I. STATEMENT OF FACTS

During 1987 through 1989 Datronic acquired in its own name 80 copier leases and underlying copier equipment from CopyTech Systems, Inc. At the time of these purchases, Datronic was the general partner of the Fund. The relationship between Datronic and the Fund is best described in the affidavit of former Datronic employee Kenneth B. Drost, the pertinent parts of which are as follows:

1. The Fund was formed as a Delaware limited partnership on April 21, 1987.

2. From April 21, 1987 through March 4, 1993, Datronic was the general partner of the Fund.

3. Datronic was authorized by the Fund to make contracts, receive money, file suits and other actions in its own name on behalf of the Fund.

4. Between October 7, 1987 and February 28, 1988, consistent with its customary practice when acquiring equipment leases on behalf of the Fund, Datronic acquired in its own name, but for the benefit of the Fund, 80 copier leases and equipment which are the subject of this lawsuit.

5. In acquiring the aforesaid 80 leases and equipment, Datronic used only the funds of the Fund.

6. At no time did Datronic need to assign its rights under any of the leases and bills of sale to the Fund because the ownership of the leases and equipment by Fund was at all times reflected in the accounting books and records of Datronic and the Fund.

7. Transactions involving the 80 leases, notwithstanding the use of Datronic's name, were credited to or debited to the account of the Fund. Fore example, payments made to Datronic were deposited in accounts held in the name of the Fund.

8. Filings pursuant to the Uniform Commercial Code were made with state authorities under the name of the Fund to reflect the ownership of the leases and equipment by the Fund.

9. Datronic purchased and owned the leases and equipment in its own name but as general partner and agent for and on behalf of the Fund.

The affidavit is attached by Datronic to its response to Motions for Summary Judgment, dated August 1, 1996 and filed on August 8, 1996. [Doc. No. 167].

In April 1991, RMP sued Datronic seeking declaratory judgment that RMP was the true owner of the CopyTech leases. On May 1, 1991 Datronic filed a Notice of Removal alleging diversity jurisdiction. Datronic filed an Answer and Counterclaim alleging that Datronic owned the CopyTech leases and alleging that RMP had interfered with or converted the CopyTech leases. In January 1992, Datronic filed a Third Party Petition against BOK and Doss alleging diversity jurisdiction and claiming BOK and Doss had interfered with or converted the CopyTech leases in 1990 and 1991.

BOK alleges it first learned from depositions of two former Datronic employees in June 1996 that the CopyTech leases had been owned by the Fund since their acquisition in 1987 and 1988. During those same depositions, BOK also learned that Datronic had been removed as general partner of the Fund on March 4, 1993 by an Illinois federal court order. The Lease Resolution Corporation replaced Datronic as general partner and it continues in that capacity today. Datronic was dissolved in September 1993.

On July 15, 1996 BOK filed a Motion for Summary Judgment (doc. no. 163) asserting that Datronic was not the real party in interest. (This motion is still pending and is not the subject of this order.) Datronic responded by claiming that the Fund should be substituted as the real party in interest or should be allowed to ratify Datronic's actions in this lawsuit. On August 8, 1996 the Fund filed a Certificate of Ratification in which the Fund did "ratify and authorize the commencement, prosection and continuation of this action ... in the name of Datronic Rent-

al Corporation for our benefit. We agree to be bound by the final determination and results in this case." [Doc. No. 169].

Datronic filed on February 7, 1997 and February 26, 1997 stipulations that the Fund has limited partners that are citizens of Oklahoma and Missouri. BOK is a national banking association with its principal place of business in Oklahoma. Doss is a citizen of Oklahoma. The RMP plaintiffs are Missouri corporations with their principal places of business in Oklahoma. On February 10, 1996 and February 11, 1996, BOK, RMP and Doss filed their Motions to Dismiss for Lack of Subject Matter Jurisdiction (doc. nos. 190 and 191) asserting no diversity of citizenship among the parties. These February 1996 motions are the subject of this Report and Recommendation.

## II. DISCUSSION

### A. *Federal Court Jurisdiction may be Challenged at Any Time.*

■ Subject matter jurisdiction may be challenged at any time and objections to such jurisdiction cannot be waived. *Laughlin v. Kmart Corp.,* 50 F.3d 871 (10th Cir.1995). An action must be dismissed when it becomes apparent that subject matter jurisdiction is lacking. *Penteco Corp. Ltd. Partnership–1985A v. Union Gas System, Inc.,* 929 F.2d 1519, 1521 (10th Cir.1991). *See* Fed. R.Civ.P. 12(h)(3):

> Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

*See also Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884):

> The rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception which requires this court ... to deny its own jurisdiction, and ... that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which ... it is called to act.

**B.** *Datronic and the Fund Are Real Parties in Interest.*

█ Rule 17 of the Federal Rules of Civil Procedure provides:

Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in·interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Civ.P. 17(a).

Under the above rule, Datronic is a real party in interest because the leases acquired by Datronic were "contracts ... made for the benefit of another." A general partner is vested with the right to bring and control litigation and is a real party in interest who "may bring the suit in his own name without joining the parties for whose benefit it is brought." *Boeing Airplane Co. v. Perry,* 322 F.2d 589, 591 (10th Cir.1963). BOK has presented no evidence or law indicating that removal of Datronic as a general partner of the Fund or dissolution of Datronic has divested Datronic of its right to proceed as a party to this lawsuit.

Even if Datronic were not a real party in interest, a real party in interest (the Fund) has ratified Datronic's actions as permitted under Rule 17(a). *See ICON Group, Inc. v. Mahogany Run Development Corp.,* 829 F.2d 473, 477 (3rd Cir.1987) (holding that a real party in interest may ratify the actions of its agent without being joined). Datronic has

satisfied the real party in interest requirements of Rule 17(a).

The facts set forth in the affidavit of Kenneth Drost, excerpted above, make it clear that the Fund is also a real party in interest. However, there is nothing in Rule 17(a) that compels its joinder as a party plaintiff.

**C.** *The Fund is not an Indispensable Party.*

Rule 19 of Federal Rules of Civil Procedure provides:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by rea-·son of the claimed interest.

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third,

whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(a) and (b).

■ The parties disagree on the proper interpretation of Rule 19. BOK argues that if joinder of the Fund would destroy diversity and "deprive the court of jurisdiction over the subject matter," the considerations of Rule 19(a) are inapplicable and you must look only to the considerations of Rule 19(b). Datronic argues Rule 19(b) considerations are made only if the court first determines that the Fund is an indispensable party under Rule 19(a) and joinder would deprive the court of jurisdiction. The undersigned agrees that if joinder is not required under Rule 19(a), the Court may proceed without joinder and the Court is not required to evaluate the applicability of Rule 19(b). *See, e.g., Snap-On Tools Corp. v. Mason*, 18 F.3d 1261 (5th Cir.1994).

■ Therefore, the Court must look first to see if the Fund is an indispensable party under Rule 19(a). A review of Rule 19(a)'s requirements establishes that the Fund is not an indispensable party and joinder is not required. Complete relief can be "accorded among those already parties" because the general partner is a real party in interest and the Fund is bound by all proceedings herein. The Tenth Circuit Court of Appeals and other circuits have so held with facts similar to this case. "Although the profits from the project may have been intended to go to the limited partnership," it was not error to allow the general partners to pursue the lawsuit in their own names. *Zimmerman v. First Federal Sav. & Loan Ass'n*, 848 F.2d 1047, 1056 (10th Cir.1988). *See also Smith v. Mandel*, 66 F.R.D. 405 (D.S.C.1975).

At first glance, this interpretation appears to create an anomaly. If the Fund is found to be a necessary party under Rule 19(a), then Rule 19(b) would allow the court to retain jurisdiction and proceed (as urged by Datronic). If the Fund is not a necessary party, the Court does not reach the discretion of 19(b), and the case must be dismissed. Finding that the Fund is an unnamed neces-

sary party allows the court to retain jurisdiction. Finding that the fund is an unnamed, unnecessary party requires the case to be dismissed for no jurisdiction — truly an anomalous result. A second look reveals that whether the Fund is a necessary party or not and whether you end up in Rule 19(a) or Rule 19(b), the citizenship of the Fund must be considered and the case dismissed. Rule 19(b) does not give the Court the discretion to proceed where there is no underlying subject matter jurisdiction.

The parties urge various parts of Rules 17 and 19 to support their positions. There is nothing in either rule that compels the court's decision either direction. Nevertheless, counsel's efforts are not in vain. Sometimes we need to look at what does not apply to see what does apply. In the visual arts, the negative space (the background) helps us see the positive (the image). In this case, Rules 17 and 19 are negative space. Real party in interest concerns raised by Rule 17 do not determine the real party in interest for diversity jurisdiction purposes.

> There is a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy. But the two rules serve different purposes and need not produce identical outcomes in all cases.

*Navarro*, 446 U.S. at 463, n. 9, 100 S.Ct. 1779. Rule 82 confirms that "[the Federal Rules of Civil Procedure] shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein."

BOK relies on *New York Life Insurance Company v. Ramco Holding Corporation*, 938 F.Supp. 754 (N.D.Okla.1996) and *Bankston v. Burch*, 27 F.3d 164 (5th Cir.1994). In both cases a limited partner filed a classic derivative action. That is, the limited partners in *Bankston* and *Ramco*, brought actions on behalf of their limited partnerships which the limited partnerships refused or failed to bring. Both courts found that the limited partnerships were indispensable parties that had to be joined. This case is not a derivative action in which a limited partner is

suing to enforce the rights of the partnership and the limited partnership is not an indispensable party for the reasons discussed above.

#### D. The Citizenship of Limited Partnership is Determined by The Citizenship of Its Limited Partners.

■ The United States Supreme Court has definitively held (unless a 5–4 decision is considered indefinite) that where a Limited Partnership is a party to an action the citizenship of each of its limited partners must be considered to determine whether the parties' citizenship is diverse. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). In *Carden* an Arizona limited partnership was the named plaintiff in a diversity action. Justice Scalia's majority opinion adhered to the court's,

> oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members,' *Chapman v. Barney*, 129 U.S. 677, 682, 9 S.Ct. 426, 32 L.Ed. 800 (1889), 'the several persons composing such association,' *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900)[, and] 'each of its members,' *Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 151, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965).

*Id.* at 195–196, 110 S.Ct. 1015. Any modification to this rule is "performed more legitimately by Congress than by the courts." *Id.* at 197, 110 S.Ct. 1015.

The dissent in *Carden*, authored by Justice O'Connor, uses the "real party to the controversy" test and argues that only the citizenship of those parties that are real parties to the controversy should be considered, citing *Navarro Savings Ass'n. v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). In *Navarro*, on which Datronic relies in this case, the Court held that the citizenship of business trust beneficiaries should not be considered in diversity determinations because those trust beneficiaries were not real parties to the controversy because they lacked both control over the conduct of the business and the ability to initiate or control the course of litigation. The *Carden* dissent

argued that application of *Navarro's* real-party-to-the-controversy test to limited partnerships yields the conclusion that limited partners should not be considered for diversity considerations.

*Carden* does not directly determine this case because of one major distinction. In *Carden* the limited partnership was a named party to the lawsuit. The Court took great care to say that when a suit is brought by a limited partnership the citizenship of each limited partner must be considered. In this case the limited partnership is not a named party and, as discussed above, is not an indispensable party that must be joined.

#### E. The Citizenship of Each Limited Partner of The Fund Must be Considered for Diversity Purposes.

■ Having discussed the relevant and not-so-relevant positions urged by the parties, the determining question appears. Must the Court consider for diversity purposes the citizenship of a limited partnership, the Fund, which is a real party in interest but is not a named party and need not be named because Fed.R.Civ.P. 17 allows suit by one for the benefit of another and allows ratification and because Fed.R.Civ.P. 19(a) finds the Fund not to be an indispensable party? This undersigned recommends that this question be answered yes. Once the Court decides that the citizenship of the Fund must be considered, then *Carden* says you must consider the citizenship of each limited partner. There is nothing in *Carden* that compels the first decision. That is required by *Navarro*.

In *Navarro* the plaintiffs were eight individual trustees of a Massachusetts business trust, suing in their own names. The defendant disputed the existence of complete diversity claiming that the trust beneficiaries, rather than the trustees, were the real parties to the controversy and the citizenship of the trust beneficiaries should control. The court rejected defendant's argument and reaffirmed the following rule:

> Federal Courts have jurisdiction over controversies between 'Citizens of different States' by virtue of 28 U.S.C. § 1332(a)(1) and U.S. Const., Art. III, § 2. Early in its

history, this court established that the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.

*Navarro,* 446 U.S. at 460–61, 100 S.Ct. 1779.

Application of the general rule, reaffirmed in *Navarro,* to this case compels the conclusion that the Fund is a real and substantial party to this controversy and that the citizenship of the Fund must be considered for diversity determinations. The affidavit of Kenneth Drost, as excerpted in the Statement of Facts, reveals the Fund to be the actual owner of the assets and the claims central to this litigation, even though the leases were acquired in Datronic's name. Deposition testimony by Datronic representatives and the Fund's ratification all indicate Datronic's position as an agent or conduit and the Fund's active participation throughout.[1]

Curiously, all parties to this case have cited *Navarro* in support of their position. The Court in *Navarro* found the trust beneficiaries were not substantial parties to the controversy because they lacked control over the conduct of the business and the ability to initiate or control the course of the litigation. Thus, the citizenship of trust beneficiaries need not be considered to determine diversity. Citing *Navarro,* Datronic argues that limited partners are not substantial parties to the controversy, and their citizenship should be ignored. Unfortunately for Datronic, what *Navarro* giveth, *Carden* taketh away. It is *Navarro* that tells us we must consider the citizenship of the Fund because it is a real party to the controversy. Even the dissent in *Carden* would agree with that. Then the *Carden* majority holds that to determine the citizenship of the Fund we must consider the citizenship of each limited partner. The *Carden* dissent would disagree with this step. Datronic argues even if the Fund is a real and substantial party, its limited partners are not, so the limited part-

ners' citizenship should not be considered. This is the position of the *Carden* dissent. That door has been closed by Justice Scalia and the *Carden* majority.

Rule 17 states that ratification "shall have the same effect as if the action had been commenced in the name of the real party in interest." If this action had been commenced in the name of the Fund, there would be no diversity jurisdiction. The Fund argues that it may ratify the proceedings to satisfy Rule 17(and has done so), but that its citizenship is not to be considered for diversity jurisdiction determination. The Fund should not be permitted to argue that it is substantial enough that its ratification is necessary to proceed, but it is not substantial enough that its citizenship must be considered for diversity purposes. It appears to the court that the goose and the gander are not being equally sauced as they try to have their cake and eat it too. The opportunities for manipulation of the process by litigants seeking or avoiding diversity jurisdiction are obvious. The limited partnership plaintiff could generate or avoid federal jurisdiction by filing in its own name or the name of its general partner as it chooses. *See Prosperity Realty, Inc. v. Haco–Canon,* 724 F.Supp. 254 (S.D.N.Y.1989).

In *Halleran v. Hoffman,* 966 F.2d 45 (1st Cir.1992), a general partner sued in his own name on behalf of a limited partnership. The general partner relied on his own diversity with the defendant to support jurisdiction. The court disagreed. Even though applicable state law required the suit to be brought in the partner's name, the claims were owned by the limited partnership and diversity had to exist between the defendant and all limited partners.

> In this case, there can be no doubt that suit was brought for and on behalf of [the limited partnership].... Consequently, the citizenship of [the limited partnership] —— which is all of its general and limited partners —— must be considered in determining whether there is diversity jurisdiction. To hold otherwise would make the rule of *Carden,* and the existence of diver-

---

1. The Court is free to consider affidavits and other materials to determine jurisdictional facts.

*See New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir.1995).

sity jurisdiction, turn on the sheer fortuity of state law relating to the name or names under which a limited partnership must sue. Those partnerships in states adhering to the old common law rule would have superior access to diversity jurisdiction and those elsewhere might seek to create diversity jurisdiction simply by not availing themselves of the right to sue in the partnership name.

*Halleran*, 966 F.2d at 48. *See also Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857 (2d Cir.1995); *Robin Realty & Management Company v. Karosen*, No. 91–C–4640, 1992 WL 281343 (N.D.Ill. Oct. 5, 1992); *Stouffer Corp. v. Breckenridge*, 859 F.2d 75 (8th Cir.1988); *Carlsberg Resources Corp. v. Cambria Savings and Loan Ass'n*, 554 F.2d 1254 (3d Cir.1977).

Datronic argues that diversity jurisdiction is not defeated by joining the Fund as a party plaintiff or ratification by the Fund because of the general rule that diversity jurisdiction is not defeated by addition of non-diverse parties to the action as long as the added party was not indispensable at the time the complaint was filed. Datronic cites *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) which confirms the general rule that diversity is assessed at the time the action is filed and subsequent joinder of a non-diverse party will not cause the court to lose jurisdiction. However, in *Freeport–McMoRan* proper diversity jurisdiction did exist at the time the complaint was filed. After the suit was filed the plaintiff assigned its contract rights to a limited partnership and added the limited partnership as a party plaintiff. In this case, diversity among the parties did not exist when the case was filed since the citizenship of the Fund should have considered from the initial filing.

### III. RECOMMENDATION

The United States Magistrate Judge recommends that the District Court *GRANT* the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed on behalf of BOK (doc. no. 191) and on behalf of RMP and Doss (doc. no. 190) because there is no diversity of citizenship among the parties. To hold otherwise would allow any limited partnership to create or destroy federal jurisdiction depending on whether they filed suit in the name of their general partner or the limited partnership.

Any objection to this Report and Recommendation must be filed with the Court Clerk within ten days of being served with a copy of this Report and Recommendation. Failure to file objections within the specified time will result in a waiver of the right to appeal the District Court's order. *See Moore v. United States*, 950 F.2d 656 (10th Cir.1991).

