In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3124

FELLOWES, INC.,

*Plaintiff-Appellee,*

*v.*

CHANGZHOU XINRUI FELLOWES OFFICE EQUIPMENT COMPANY
LTD.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 6289 — **Ronald A. Guzmán**, *Judge.*

ARGUED APRIL 2, 2014 — DECIDED JULY 22, 2014

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* This suit presents a claim
that defendant (Changzhou Fellowes for short), a business
established under the law of China, broke a promise to
plaintiff (Fellowes for short). As the names suggest, the
businesses are related. One investor-member of Changzhou
Fellowes is Hong Kong Fellowes, which despite its name has
its principal place of business in Illinois. Fellowes filed this

breach-of-contract suit under the international diversity jurisdiction, 28 U.S.C. §1332(a)(2), a step that is proper only if Changzhou Fellowes has its own citizenship, independent of its investors or members. If it is a limited liability company, by contrast, then it has the citizenship of each member, see *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir. 1998), and the Illinois citizenship of its member Hong Kong Fellowes prevents the complete diversity necessary to the use of §1332, for Fellowes also is a citizen of Illinois.

Corporations are persons with two citizenships, which 28 U.S.C. §1332(c)(1) specifies as the jurisdiction of incorporation plus the principal place of business. (Section 1332(c) was amended in 2012; we apply the prior version, see *Mas Capital, Inc. v. Biodelivery Sciences International, Inc.*, 524 F.3d 831 (7th Cir. 2008), because the amended text applies only to suits begun after January 5, 2012. Nothing turns on the difference, for both versions impute Illinois citizenship to both Fellowes and Hong Kong Fellowes.)

Other collective entities have the citizenship of each member or equity investor. See, e.g., *Carden v. Arkoma Associates*, 494 U.S. 185 (1990). That norm was established in *Chapman v. Barney*, 129 U.S. 677 (1889) (a joint stock company has the citizenship of every investor), and reiterated in *Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145 (1965) (a labor union has the citizenship of every member). This approach is often stated as the rule that only a corporation has citizenship determined independently of the investors' citizenship.

Without discussing subject-matter jurisdiction, the district court entered a preliminary injunction in favor of Fellowes—and this despite the court's assumption that Changzhou Fellowes has yet to be served with process. 2012 U.S.

Dist. LEXIS 115708 (N.D. Ill. Aug. 16, 2012). Changzhou Fellowes contends that the district court lacks both subject-matter jurisdiction over the case and personal jurisdiction over it. We start and end with subject-matter jurisdiction.

Deciding whether a business enterprise based in a foreign nation should be treated as a corporation for the purpose of §1332 can be difficult. See, e.g., *White Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*, 647 F.3d 684 (7th Cir. 2011). Businesses in other nations may have attributes that match only a subset of those that in the United States distinguish a "corporation"—a business with indefinite existence, personhood (the right to contract and litigate in its own name), limited liability for equity investors, and alienable shares, among other features—from forms such as the limited liability company, the limited partnership, and the business trust.

Fellowes's complaint calls Changzhou Fellowes a "limited liability company". Changzhou Fellowes describes itself that way too. The parties agree that it has "members" (like an LLC or partnership in the United States) rather than "shareholders," and that memberships are not alienable. It is like a general partnership in the latter respect. It is unnecessary to consider its other attributes, because Fellowes has greatly simplified the task by pinning its entire argument on a single proposition: That every "juridical person"—that is, every entity that can own property, make contracts, transact business, and litigate in its own name—is a corporation for the purpose of §1332 no matter what other attributes it has or lacks. If this proposition is wrong, then the suit must be dismissed for lack of subject-matter jurisdiction.

The proposition is indeed wrong. It is inconsistent with *Carden*, which held that a limited partnership is not a corpo-

ration under §1332 even though it has all the properties of a
juridical person. It is inconsistent with *Cosgrove*, which held
that a limited liability company is not a corporation under
§1332 even though it has all the properties of a juridical per-
son. It is inconsistent with *Indiana Gas Co. v. Home Insurance
Co.*, 141 F.3d 314, rehearing denied, 141 F.3d 320 (7th Cir.
1998), which held that a syndicate underwriting insurance at
Lloyd's of London is not a corporation under §1332 even
though it has all the properties of a juridical person.

Fellowes locates its "juridical entity" principle in *Puerto
Rico v. Russell & Co.*, 288 U.S. 476 (1933), which held that a
*sociedad en comandita* created under the law of Puerto Rico
could litigate in federal court as an entity. The Court ex-
plained that it reached that conclusion in large measure be-
cause Puerto Rico recognized the *sociedad en comandita* as a
juridical person. 288 U.S. at 481. Our opinion in *Auto-
cephalous Greek-Orthodox Church v. Goldberg and Feldman Fine
Arts, Inc.*, 917 F.2d 278, 285 (7th Cir. 1990), concluded that
anything that qualifies as a single entity under *Russell* has
only its own citizenships for the purpose of the diversity ju-
risdiction. This meant that a church based in Cyprus was a
corporation in part because Cyprus treated it as a juridical
entity able to make contracts and sue in its own name. So
there is certainly support for the argument that Fellowes has
staked out. But it is wrong nonetheless.

*Autocephalous Greek-Orthodox Church* did not mention ei-
ther *Chapman* or *Bouligny*, even though *Bouligny* had con-
fined *Russell* to its facts. Nor did it mention *Carden*, which
discussed *Russell* at length. Here's what the Court had to say
in *Carden*, 494 U.S. at 189–90:

> The one exception to the admirable consistency of our jurisprudence … is *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933), which held that the entity known as a *sociedad en comandita*, created under the civil law of Puerto Rico, could be treated as a citizen of Puerto Rico for purposes of determining federal-court jurisdiction. The *sociedad*'s juridical personality, we said, "is so complete in contemplation of the law of Puerto Rico that we see no adequate reason for holding that the *sociedad* has a different status for purposes of federal jurisdiction than a corporation organized under that law." *Id*. at 482. Arkoma fairly argues that this language, and the outcome of the case, "reflect the Supreme Court's willingness to look beyond the incorporated/unincorporated dichotomy and to study the internal organization, state law requirements, management structure, and capacity or lack thereof to act and/or sue, to determine diversity of citizenship." Brief for Respondent 14. The problem with this argument lies not in its logic, but in the fact that the approach it espouses was proposed and specifically rejected in *Bouligny*. There, in reaffirming "the doctrinal wall of *Chapman v. Barney*," we explained *Russell* as a case resolving the distinctive problem "of fitting an exotic creation of the civil law … into a federal scheme which knew it not." 382 U.S. at 151. There could be no doubt, after *Bouligny*, that at least common-law entities (and likely all entities beyond the Puerto Rican *sociedad en comandita*) would be treated for purposes of the diversity statute pursuant to what *Russell* called "the tradition of the common law," which is "to treat as legal persons only incorporated groups and to assimilate all others to partnerships." 288 U.S. at 480.

In other words, *Russell* and its juridical-entity approach cover the *sociedad en comandita* and nothing else. *Russell* does not mean that limited liability companies—organized within or outside the United States—have their own citizenships. Having held in *Cosgrove* that an American LLC has the citizenship of every member-investor, we are not about to establish a different rule for functionally identical entities established under other nations' laws.

Given the parties' agreement that Changzhou Fellowes is closer to a limited liability company than to any other business structure in this nation, it does not have its own citizenship—and it *does* have the Illinois citizenship of its member Hong Kong Fellowes, which prevents litigation under the diversity jurisdiction. We need not decide today whether to overrule *Autocephalous Greek-Orthodox Church*, in which the juridical-entity reasoning was an alternative ground of decision. It should be understood, however, that the case cannot be generalized to entities other than religious bodies organized under the law of Cyprus.

The judgment of the district court is vacated, and the case is remanded with instructions to dismiss for want of subject-matter jurisdiction.